# SULLIVAN, SECRETARY OF HEALTH AND HUMAN SERVICES *v.* FINKELSTEIN

No. 89–504.   Argued April 24, 1990—Decided June 18, 1990

618

WHITE, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BRENNAN, MARSHALL, STEVENS, O'CONNOR, and KENNEDY, JJ., joined, and in which SCALIA, J., joined except as to n. 8.   SCALIA, J., filed an opinion concurring in part, *post*, p. 631.   BLACKMUN, J., filed an opinion concurring in the judgment, *post*, p. 632.

*Deputy Solicitor General Shapiro* argued the cause for petitioner.   With him on the briefs were *Solicitor General Starr, Assistant Attorney General Gerson,* and *Edwin S. Kneedler.*

*Kenneth V. Handal* argued the cause for respondent. With him on the brief were *Dennis G. Lyons* and *Mary G. Sprague.*

JUSTICE WHITE delivered the opinion of the Court.

We granted certiorari to decide whether the Secretary of Health and Human Services may immediately appeal a district court order effectively declaring invalid regulations that limit the kinds of inquiries that must be made to determine whether a person is entitled to disability insurance benefits and remanding a claim for benefits to the Secretary for consideration without those restrictions.   We hold that the Secretary may appeal such an order as a "final decision" under 28 U. S. C. § 1291.[1]

I

Respondent Finkelstein is the widow of a wage earner who died in 1980 while fully insured under Title II of the Social

---

[1] Title 28 U. S. C. § 1291 provides that "[t]he courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts . . . except where a direct review may be had in the Supreme Court."

Security Act, 49 Stat. 622, as amended, 42 U. S. C. § 401 *et seq.* (1982 ed.). In 1983, respondent applied to the Social Security Administration for widow's disability benefits, claiming that her heart condition made her disabled within the meaning of the section of the Social Security Act providing for surviving spouses' disability insurance benefit payments, § 223, as added, 70 Stat. 815, and as amended, 42 U. S. C. §§ 423(d)(1)(A), (d)(2)(B) (1982 ed. and Supp. V).

Section 423(d)(2)(B) states that a widow shall not be determined to be disabled unless her impairment is of a level of severity which, "under regulations prescribed by the Secretary," is deemed sufficient to preclude an individual from engaging in any gainful activity. Under regulations promulgated by the Secretary, 20 CFR §§ 404.1577, 404.1578(a)(1) (1989), a surviving spouse is deemed disabled only if the spouse suffers from a physical or mental impairment meeting or equaling the severity of an impairment included in the Secretary's Listing of Impairments located at Appendix 1 to 20 CFR pt. 404, subpt. P (1989). If the surviving spouse's impairment does not meet or equal one of the listed impairments, the Secretary will not find the spouse disabled; in particular, the Secretary will not consider whether the spouse's impairment nonetheless makes the spouse disabled, given the spouse's age, education, and work experience.

The Secretary's practice for spouses' disability insurance benefits thus differs significantly from the regulations for determining whether a wage earner is entitled to disability insurance benefits. For wage earners, the Secretary has established a "five-step sequential evaluation process for determining whether a person is disabled." *Bowen* v. *Yuckert,* 482 U. S. 137, 140 (1987). Under that five-step process, even if a wage earner's impairment does not meet or equal one of the listed impairments, the wage earner may nonetheless be entitled to disability insurance benefits if the Secretary determines that his "impairment in fact prevents him from working." *Sullivan* v. *Zebley,* 493 U. S. 521, 535

(1990). The Secretary maintains that the difference between the wage earner regulations and the surviving spouse regulations is supported by a difference between the two pertinent statutory definitions of disability. Compare 42 U. S. C. § 423(d)(2)(A) with § 423(d)(2)(B) (1982 ed. and Supp. V).

Respondent's application for benefits was denied on the ground that her heart condition did not meet or equal a listed impairment. After exhausting administrative remedies, respondent sought judicial review of the Secretary's decision in the United States District Court for the District of New Jersey, invoking § 205(g) of the Social Security Act, as amended, 53 Stat. 1370, 42 U. S. C. § 405(g) (1982 ed.).[2] The District

---

[2] Title 42 U. S. C. § 405(g) (1982 ed.) provides:

"Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia. As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Secretary or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Secretary, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations. The court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evi-

Court sustained the Secretary's conclusion that respondent did not suffer from an impairment that met or equaled a listed impairment.   See App. to Pet. for Cert. 16a.   The District Court nonetheless concluded that "the case must be remanded to the Secretary," *id.*, at 17a, because the record was "devoid of any findings" regarding respondent's inability to engage in any gainful activity even though her impairment was not equal to one of the listed impairments, see *ibid.*

The Court of Appeals for the Third Circuit dismissed the Secretary's appeal for lack of jurisdiction.   *Finkelstein* v. *Bowen*, 869 F. 2d 215 (1989).   The Court of Appeals relied on its past decisions holding that " 'remands to administrative agencies are not ordinarily appealable.' "   *Id.*, at 217 (citation omitted).   Although the Court of Appeals acknowledged an exception to that rule for cases "in which an important legal issue is finally resolved and review of that issue would be foreclosed 'as a practical matter' if an immediate appeal were unavailable," *ibid.* (citation omitted), that exception was deemed inapplicable in this case because the Secretary might persist in refusing benefits even after consideration of respondent's residual functional capacity on remand, and the District Court might thereafter order that benefits be granted, thereby providing the Secretary with an appealable

dence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.   Such additional or modified findings of fact and decision shall be reviewable only to the extent provided for review of the original findings of fact and decision.   The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions. Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Secretary or any vacancy in such office."

final decision. *Id.*, at 220. The Court of Appeals conceded that the Secretary might not be able to obtain review at a later point if he concluded on remand that respondent was entitled to benefits based on her lack of residual functional capacity, but it believed this argument for immediate appealability to be foreclosed by a prior decision of the Circuit. *Ibid.* We granted certiorari, 493 U. S. 1055 (1990).

## II

We begin by noting that the issue before us is not the broad question whether remands to administrative agencies are always immediately appealable. There is, of course, a great variety in remands, reflecting in turn the variety of ways in which agency action may be challenged in the district courts and the possible outcomes of such challenges.[3] The question before us rather is whether orders of the type entered by the District Court in this case are immediately appealable by the Secretary. It is necessary therefore to consider precisely what the District Court held and why it remanded this case to the Secretary.

Although the District Court sustained the Secretary's conclusion that respondent did not suffer from an impairment that met or equaled the severity of a listed impairment, it concluded that the Secretary's ultimate conclusion that respondent was not disabled could not be sustained because other medical evidence suggested that respondent might not

---

[3] For example, a district court may on occasion order a remand to an agency even though the district court action was filed by the agency, not someone seeking judicial review, *e. g.*, *United States* v. *Alcon Laboratories*, 636 F. 2d 876 (CA1), cert. denied, 451 U. S. 1017 (1981). In other cases the district court may order a remand to the agency but the person seeking judicial review may seek to appeal on the ground that broader relief should have been granted by the district court, *e. g.*, *Bohms* v. *Gardner*, 381 F. 2d 283 (CA8 1967), cert. denied, 390 U. S. 964 (1968). None of these situations are presented in this case, and we express no opinion about appealability in those circumstances.

be able to engage in any gainful activity.[4]   Considering it "anomalous" that an impairment actually leaving respondent without the residual functional capacity to perform any gainful activity could be insufficient to warrant benefits just because it was not equal to one of the listed impairments, the District Court directed the Secretary "to inquire whether [respondent] may or may not engage in any gainful activity, as contemplated by the Act."   App. to Pet. for Cert. 18a. The District Court's order thus essentially invalidated, as inconsistent with the Social Security Act, the Secretary's regulations restricting spouses' disability insurance benefits to those claimants who can show that they have impairments with "specific clinical findings that are the same as . . . or are medically equivalent to" one of the listed impairments, 20 CFR § 404.1578(a)(1) (1989).   Cf. *Heckler* v. *Campbell*, 461 U. S. 458, 465–466 (1983).   The District Court stated that it was "remand[ing]" the case to the Secretary because the record contained no findings about the functional impact of respondent's impairment; in effect it ordered the Secretary to address respondent's ailment without regard for the regulations that would have precluded such consideration.   The District Court's order thus reversed the Secretary's conclusion that respondent was not disabled and remanded for further consideration of respondent's medical condition.

Once the nature of the District Court's action is clarified, it becomes clear how this action fits into the structure of § 405 (g).   The first sentence of § 405(g) provides that an individual denied benefits by a final decision of the Secretary may obtain judicial review of that decision by filing "a civil action" in federal district court.   The use of the term "a civil action"

---

[4] Specifically, the District Court noted that an Administrative Law Judge "found that the 'medical findings shown in the medical evidence of record establish the existence of mitral valve prolapse,'" App. to Pet. for Cert. 17a, which does not meet or equal one of the listed impairments but might, in the District Court's view, prevent respondent from engaging in any gainful activity, *ibid.*

suggests that at least in the context of § 405(g), each final decision of the Secretary will be reviewable by a separate piece of litigation.[5]    The fourth and eighth sentences of § 405(g) buttress this conclusion.    The fourth sentence states that in such a civil action, the district court shall have the power to enter "a *judgment* affirming, modifying, or reversing the decision of the Secretary, *with or without remanding the cause for a rehearing.*"    (Emphasis added.)    This sentence describes the action that the District Court actually took in this case.    In particular, although the fourth sentence clearly foresees the possibility that a district court may remand a cause to the Secretary for rehearing (as the District Court did here), nonetheless such a remand order is a "judgment" in the terminology of § 405(g).    What happened in this case is that the District Court entered "a judgment . . . reversing the decision of the Secretary, with . . . remanding the cause for a rehearing."    The District Court's remand order was unquestionably a "judgment," as it terminated the civil action challenging the Secretary's final determination that respondent was not entitled to benefits, set aside that determination, and finally decided that the Secretary could not follow his own regulations in considering the disability issue.    Furthermore, should the Secretary on remand undertake the inquiry mandated by the District Court and award benefits, there would be grave doubt, as the Court of Appeals recognized, whether he could appeal his own order.    Thus it is that the eighth sentence of § 405(g) provides that "[t]he judgment of the court *shall be final* except that it shall be subject to review in the same manner as a judgment in other civil actions."    (Emphasis added.)

Respondent makes several arguments countering this construction of § 405(g) and of the District Court's order, none of which persuade us.    First, respondent argues that the re-

---

[5] Neither party suggests that the Secretary's decision denying respondent benefits without considering her mitral valve prolapse was not a "final decision of the Secretary" within the meaning of § 405(g).

mand in this case was ordered not pursuant to the fourth sentence of § 405(g), but under the sixth sentence of that section, which states in pertinent part that the District Court may "at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Respondent points out that the District Court stated that it was ordering a remand because the evidence on the record was insufficient to support the Secretary's conclusion and that further factfinding regarding respondent's ailment was necessary. We do not agree with respondent that the District Court's action in this case was a "sixth-sentence remand." The sixth sentence of § 405(g) plainly describes an entirely different kind of remand, appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding.[6]

For the same reason, we reject respondent's argument, based on the seventh sentence of § 405(g), that the district court may enter an appealable final judgment upon reviewing the Secretary's postremand "additional or modified findings of fact and decision." The postremand review conducted by the District Court under the seventh sentence refers only to

---

[6] See, e. g., Caulder v. Bowen, 791 F. 2d 872 (CA11 1986); Borders v. Heckler, 777 F. 2d 954, 955 (CA4 1985); Newhouse v. Heckler, 753 F. 2d 283, 287 (CA3 1985); Booz v. Secretary of Health and Human Services, 734 F. 2d 1378, 1381 (CA9 1984); Dorsey v. Heckler, 702 F. 2d 597, 604–605 (CA5 1983); Cagle v. Califano, 638 F. 2d 219, 221 (CA10 1981). Although all the Circuits recognize that new evidence must be "material" to warrant a sixth-sentence remand, it is not clear whether the Circuits have interpreted the requirement of materiality in the same way. See Dorsey, supra, at 605, n. 9 (criticizing "stricter position" of Fourth and Tenth Circuits); Godsey v. Bowen, 832 F. 2d 443, 444 (CA7 1987) (expressing skepticism about existence of conflict); Borders, supra, at 956 (also skeptical). We express no opinion on the proper definition of materiality in this context.

cases that were previously remanded under the sixth sentence. The seventh sentence states that the district court may review "[s]uch additional or modified findings of fact," a reference to the second half of the sixth sentence of § 405(g), which requires that "the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision . . . ." The phrase "such additional evidence" refers in turn to the "additional evidence" mentioned in the first half of the sixth sentence that the district court may order the Secretary to take in a sixth-sentence remand. See *supra*, at 625–626. But as the first half of the sixth sentence makes clear, the taking of this additional evidence may be ordered only upon a showing that there is material new evidence. The postremand judicial review contemplated by the seventh sentence of § 405(g) does not fit the kind of remand ordered by the District Court in this case.

Respondent also argues that the eighth sentence of § 405(g), providing that the judgment of the district court "shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions," does not compel the conclusion that a judgment entered pursuant to the fourth sentence is immediately appealable. In respondent's view, Congress used the the term "final" in the eighth sentence only to make clear that a court's decision reviewing agency action could operate as law of the case and res judicata. Cf. *City of Tacoma* v. *Taxpayers of Tacoma*, 357 U. S. 320, 336 (1958). But even if it is true that Congress used the term "final" to mean "conclusively decided," this reading does not preclude the construction of "final" to include "appealable," a meaning with which "final" is usually coupled. Nor does respondent consider the significance of Congress' use of the term "judgment" to describe the action

taken by the District Court in this case.[7]  Although respondent argues that the words "final decisions," as used in 28 U. S. C. § 1291, encompass no more than what was meant by the terms "final judgments and decrees" in the predecessor statute to § 1291, respondent recognizes that "final judgments" are at the core of matters appealable under § 1291, and respondent does not contest the power of Congress to define a class of orders as "final judgments" that by inference would be appealable under § 1291.  Cf. *Sears, Roebuck & Co.* v. *Mackey*, 351 U. S. 427, 434 (1956).  This is what Congress has done in the fourth sentence of § 405(g).[8]

---

[7] It is true, as respondent maintains, that the District Court did not caption its order as a "judgment," much less a "final judgment."  The label used by the District Court of course cannot control the order's appealability in this case, any more than it could when a district court labeled a non-appealable interlocutory order as a "final judgment."  See *Liberty Mutual Ins. Co.* v. *Wetzel*, 424 U. S. 737 (1976).

[8] Respondent also makes two arguments based on subsequent legislative history to counter the conclusion that Congress intended orders entered under the fourth sentence of § 405(g) to be appealable final judgments.  First, she relies on a committee print prepared by the Social Security Subcommittee of the House Ways and Means Committee which, in summarizing amendments to the Social Security Act, stated that under prior law, a district court could remand a case to the Secretary on its own motion and that the judgment of the district court would be final *after* the Secretary filed any modified findings of fact and decision with the court, and that no change had been made by the amendments.  See The Social Security Amendments of 1977: Brief Summary of Major Provisions and Detailed Comparison With Prior Law, WMCP No. 95–72, p. 26 (1978) (Brief Summary).  The committee print's observations are entirely consistent with the construction we have placed on remands ordered under the sixth sentence of § 405(g).  Moreover, leaving aside all the usual difficulties inherent in relying on subsequent legislative history, see, *e. g., United States* v. *Mine Workers*, 330 U. S. 258, 281–282 (1947), we note that the print specifically warned that it was prepared by the subcommittee staff for informational purposes only and was not considered or approved by the subcommittee, and that it was designed not to be a section-by-section analysis of the amendments but only a "narrative synopsis."  Brief Summary,

More generally, respondent argues that a power in the district court to remand to an agency is always incident to the power to review agency action and that § 405(g) only expanded the district courts' equitable powers; therefore, she insists, it is improper to construe § 405(g) as a limit on the district courts' power to remand. This argument misapprehends what Congress sought to accomplish in § 405(g). The fourth sentence of § 405(g) does not "limit" the district courts' authority to remand. Rather, the fourth sentence directs the entry of a final, appealable judgment even though that judgment may be accompanied by a remand order. The fourth sentence does not require the district court to choose between entering a final judgment and remanding; to the contrary, it specifically provides that a district court may enter judgment "with or without remanding the cause for a rehearing."

Finally, respondent argues that we already decided last Term, in *Sullivan* v. *Hudson*, 490 U. S. 877 (1989), that a remand order of the kind entered in this case is not appealable as a final decision. Although there is language in *Hudson*

at I, V. We therefore cannot assign this committee print any significant weight.

Second, respondent relies on a House Judiciary Committee Report on amendments to the Equal Access to Justice Act (EAJA), stating that a district court's remand decision under § 405(g) is not a "final judgment." H. R. Rep. No. 99–120, p. 19 (1985). Again, we cannot conclude that this subsequent legislative history overthrows the language of § 405(g). In the first place, this part of this particular Committee Report concerned the proper time period for filing a petition for attorney's fees under EAJA, not appealability. Second, the Committee relied in particular on *Guthrie* v. *Schweiker*, 718 F. 2d 104 (CA4 1983), for the proposition that a remand order is not a final judgment, but *Guthrie* also concerned the time for filing an attorney's fees petition, and it is far from clear that *Guthrie* did not involve a sixth-sentence remand. *Guthrie*, in turn, relied on *Gilcrist* v. *Schweiker*, 645 F. 2d 818, 819 (CA9 1981), which, quite unlike the present case, involved an appeal from a district court remand order that did "no more than order clarification of the administrative decision."

supporting respondent's interpretation of that case, we do not find that language sufficient to sustain respondent's contentions here. In *Hudson*, we held that under the EAJA, 28 U. S. C. § 2412(d)(1)(A), a federal court may award a Social Security claimant attorney's fees for representation during administrative proceedings held pursuant to a district court order remanding the action to the Secretary. We were concerned there with interpreting the term "any civil action" in the EAJA,[9] not with deciding whether a remand order could be appealed as a "final decision" under 28 U. S. C. § 1291. We noted in *Hudson* that the language of § 2412(d)(1)(A) must be construed with reference to the purpose of the EAJA and the realities of litigation against the Government. The purpose of the EAJA was to counterbalance the financial disincentives to vindicating rights against the Government through litigation; given this purpose, we could not believe that Congress would "throw the Social Security claimant a lifeline that it knew was a foot short" by denying her attorney's fees for the mandatory proceedings on remand. *Hudson, supra*, at 890. We also recognized that even if a claimant had obtained a remand from the district court, she would not be a "prevailing party" for purposes of the EAJA until the result of the administrative proceedings held on remand was known. 490 U. S., at 887–888. We therefore concluded that for purposes of the EAJA, the administrative proceedings on remand "should be considered part and parcel of the action for which fees may be awarded." *Id.*, at 888. We did not say that proceedings on remand to an agency are "part and parcel"

---

[9] Title 28 U. S. C. § 2412(d)(1)(A) provides in pertinent part:

"Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."

of a civil action in federal district court for all purposes, and we decline to do so today.

Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE SCALIA, concurring in part.

I join the opinion of the Court, except for footnote 8, which responds on the merits to "two arguments based on subsequent legislative history." *Ante,* at 628, n. 8.

The legislative history of a statute is the history of its consideration and enactment. "Subsequent legislative history"—which presumably means the *post*-enactment history of a statute's consideration and enactment—is a contradiction in terms. The phrase is used to smuggle into judicial consideration legislators' expressions *not* of what a bill currently under consideration means (which, the theory goes, reflects what their colleagues understood they were voting for), but of what a law *previously enacted* means.

It seems to be a rule for the use of subsequent legislative history that the legislators or committees of legislators whose post-enactment views are consulted must belong to the institution that passed the statute. Never, for example, have I seen floor statements of Canadian MP's cited concerning the meaning of a United States statute; only statements by Members of Congress qualify. No more connection than that, however, is required. It is assuredly *not* the rule that the legislators or committee members in question must have considered, or at least voted upon, the particular statute in question—or even that they have been members of the particular Congress that enacted it. The subsequent legislative history rejected as inconclusive in today's footnote, for example, tells us (according to the Court's analysis) what committees of the 99th and 95th Congresses thought the 76th Congress intended.

In my opinion, the views of a legislator concerning a statute already enacted are entitled to no more weight than the views of a judge concerning a statute not yet passed. In some situations, of course, the expression of a legislator relating to a previously enacted statute may bear upon the meaning of a provision in a bill under consideration—which provision, if passed, may in turn affect judicial interpretation of the previously enacted statute, since statutes *in pari materia* should be interpreted harmoniously. Such an expression would be useful, if at all, not because it was subsequent legislative history of the earlier statute, but because it was plain old legislative history of the later one.

Arguments based on subsequent legislative history, like arguments based on antecedent futurity, should not be taken seriously, not even in a footnote.

JUSTICE BLACKMUN, concurring in the judgment.

I am not convinced, as the other Members of the Court appear to be, that the order with which we are concerned is a final decision. It seems to me that the Court in its opinion expends its energy fending off respondent's arguments as to nonappealability, without itself demonstrating finality in a positive way.

I concur in the judgment, however. Although I think the order is not a final decision under 28 U. S. C. § 1291, it is immediately appealable under the collateral order doctrine enunciated in *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U. S. 541 (1949). This is the view adopted by the great majority of the Courts of Appeals, and I am in agreement with their conclusions. See, *e. g., Colon* v. *Secretary of HHS*, 877 F. 2d 148, 151–152 (CA1 1989); *Doughty* v. *Bowen*, 839 F. 2d 644, 645–646 (CA10 1988); *Huie* v. *Bowen*, 788 F. 2d 698, 701–703 (CA11 1986).