939 F.2d 153
 Carolyn W. COLVIN, Secretary; Maryland Department of Human
Resources, Plaintiffs-Appellees,
v.
Louis W. SULLIVAN, Secretary of Health and Human Services;
Department of Health and Human Services,
Defendants-Appellants.
 No. 90-2690.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 7, 1991.
Decided July 3, 1991.
As Amended Aug. 5, 1991.
 
 1
 James Shapley Feight, Jr., Asst. Regional Counsel, Office of Gen. Counsel, Dept. of Health and Human Services, Philadelphia, Pa., argued (Eileen Bradley, Chief Counsel, Region III, Michael Leonard, Supervisory Asst. Regional Counsel, Office of Gen. Counsel, Dept. of Health and Human Services, Philadelphia, Pa., Stuart M. Gerson, Asst. Atty. Gen., U.S. Dept. of Justice, Washington, D.C., Breckinridge L. Willcox, U.S. Atty., Beth P. Gesner, Asst. U.S. Atty., Baltimore, Md., on brief), for defendants-appellants.
 
 
 2
 Mark Jason Davis, Asst. Atty. Gen., argued (J. Joseph Curran, Jr., Atty. Gen. of Md., on brief), Baltimore, Md., for plaintiffs-appellees.
 
 
 3
 Before NIEMEYER, Circuit Judge, and SMITH, District Judge for the Eastern District of Virginia, sitting by designation, and KISER, District Judge for the Western District of Virginia, sitting by designation.
 
 OPINION
 KISER, District Judge:
 
 4
 This case involves a reimbursement program operated by the Department of Health and Human Services under the Title IV-E of the Social Security Act, the Adoption Assistance and Child Welfare Act (hereinafter "Title IV-E"). Maryland sought additional reimbursement for administrative expenses incurred between 1983 and 1985. The district court granted summary judgment to plaintiffs, and directed HHS to recalculate its reimbursements during that time period. HHS has appealed that decision. We find that the decision appealed was final, reverse the district court's order, and remand to the district court for entry of final judgment for the United States.
 
 I.
 
 5
 Congress passed Title IV-E in 1980, establishing a program through which states could receive reimbursement for expenses associated with foster care programs. Title IV-E requires states to submit a "Cost Allocation Plan" (CAP) explaining how administrative costs would be allocated among various programs run by the state. 42 U.S.C. Sec. 671(a).
 
 
 6
 Maryland submitted a CAP in December 1981, which HHS approved. This CAP utilized the "Random Moment Study" (RMS) method for determining how much of a social worker's time was eligible for Title IV-E fund reimbursement. RMS apparently measured only one activity of social workers that was eligible for reimbursement, and failed to record other reimbursable time. Over time, Maryland became aware that RMS substantially underreported the reimbursable time spent by social workers.
 
 
 7
 On December 30, 1985, Maryland proposed to change the way it measured the time spent by state and local workers to the "Social Services Time Study" (SSTS) method. SSTS required an observer to determine which activity social workers were engaged in at random moments over a five week period every quarter. SSTS, unlike RMS, also measured all potentially reimbursable activities of social workers. HHS approved the change effective October 1, 1985, the date that Maryland began using the SSTS measuring system.
 
 
 8
 Maryland also wished to use an estimation drawn from the SSTS data of the final quarter of 1985 to recalculate reimbursements for the previous two years. However, it had no means of measuring the time spent by social workers in the previous quarters on reimbursable activities. It based these estimates on the percentage of time its social workers spent on permissible administrative activities in the final quarter of 1985, adjusted to reflect the number of Title IV-E children in Maryland foster homes in the previous eight quarters. Maryland estimated that it was owed $4,896,479.
 
 
 9
 HHS denied Maryland's request for retroactive reimbursements. In considering whether to apply the amended CAP retroactively, HHS relied on 45 C.F.R. Sec. 95.515. That regulation creates a rebuttable presumption against retroactive adjustments, subject to limited exceptions, only one of which is arguably relevant here:
 
 
 10
 As a general rule, the effective date of a cost allocation plan amendment shall be the first day of the calendar quarter following the date of the event that required the amendment. However, the effective date of the amendment may be earlier or later under the following conditions: (a) An earlier date is needed to avoid a significant inequity to either the State or the Federal Government.
 
 
 11
 Maryland argued that the regulatory presumption against retroactive adoption of CAP amendments was inconsistent with the statute of limitations provision of the Social Security Act, 42 U.S.C. Sec. 1320b-2. Maryland argued in the alternative that retroactive adoption of its plan amendment was necessary to avoid a "significant inequity." HHS determined that its regulation was valid, and that the exception was inapplicable. Maryland appealed the denial of retroactive reimbursements to HHS' Departmental Appeals Board, and then to the District Court of Maryland.
 
 
 12
 The district court reversed the Departmental Appeals Board and granted summary judgment in favor of Maryland. It found that 45 C.F.R. Sec. 95.515 was invalid, at least as applied to the facts of this case, because it conflicted with 42 U.S.C. Sec. 1320b-2, which states:
 
 
 13
 [A]ny claim by a State for payment with respect to an expenditure made during any calendar quarter by the State ... shall be filed (in such form and manner as the Secretary shall by regulations prescribe) within the two-year period which begins on the first day of the calendar quarter immediately following such calendar quarter.
 
 
 14
 (Emphasis added.) The district court found that the statute allows states to request retroactive adjustments of their reimbursements in the two year period, and that HHS' regulation impermissibly restricted that right. The district court remanded the matter to HHS with instructions to determine the proper reimbursement for expenses between October 1, 1983 and October 1, 1985. HHS has appealed the remand order. The district court granted summary judgment based on its review of the agency's administrative record, which has also been presented before us. "[O]nce appealed, the district court decision is accorded no particular deference." Brown v. Department of Interior, 679 F.2d 747, 749 (8th Cir.1982).
 
 II.
 
 15
 The district court's remand order was a final judgment, allowing appeal under 28 U.S.C. Sec. 1291. The procedural posture is functionally equivalent to that in Sullivan v. Finkelstein, --- U.S. ----, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990). In that case, a district court had ruled that an HHS regulation was invalid, and directed the Secretary to reconsider its earlier decision denying benefits without regard to the regulation. Although the order directed a remand and did not enter judgment for a particular sum of money for the petitioner, the Supreme Court held that it was an appealable judgment:
 
 
 16
 [I]t terminated the civil action challenging the Secretary's final determination that respondent was not entitled to benefits, set aside that determination, and finally decided that the Secretary could not follow his own regulations in considering the disability issue. Furthermore, should the Secretary on remand undertake the inquiry mandated by the District Court, there would be grave doubt ... whether he could appeal his own order.
 
 
 17
 Finkelstein, 110 S.Ct. at 2664. In this case as well, the Secretary might have no opportunity to defend 45 C.F.R. Sec. 95.515 before an appellate court if he were to comply with the remand order and recalculate Maryland's reimbursement for the past 1983-1985 period. We shall therefore consider the merits of this appeal.III.
 
 
 18
 The principal issue in this case is whether HHS' regulation is inconsistent with the statute of limitations, 42 U.S.C. Sec. 1320b-2(a). We perceive no inconsistency. The regulation defines HHS' criteria for approving claims for reimbursement, and does not address when claims must be filed. Section 1320b-2 requires HHS to consider any claim filed within two years of the period requested, but does not list any substantive criteria for judging the merits of such claims. HHS did consider Maryland's claim for reimbursement for the period from October 1, 1983, so it complied with Sec. 1320b-2.
 
 
 19
 The district court holding that Sec. 1320b-2 "does not require that its provisions be implemented by regulations, nor is there any indication from the language employed that any such regulation is necessary," District Court opinion at 10, is incorrect, as the statutory text states that filings must be "in such form and manner as the Secretary may by regulation prescribe." The Secretary must consider all retroactive claims, but grant only those in compliance with applicable regulations.
 
 
 20
 45 C.F.R. Sec. 95.515 reasonably presumes that a new CAP, as opposed to a claim submitted under an existing CAP, ordinarily should go into effect after the date when "a material defect is discovered" in the existing plan. 45 C.F.R. Sec. 95.509(a). This regulation gives states an incentive to carefully examine their CAPs at all times, to discover any defects that might exist as early as possible. Maryland could not prove that the RMS method was materially defective until it began measuring its employees' time by the SSTS method, on October 1, 1985. Increasing disbursements from the date that Maryland began measuring by the SSTS method, and no earlier, is entirely appropriate. The Secretary did not abuse his discretion in making this determination.
 
 
 21
 Maryland's CAPs under both the RMS and the SSTS methods required it to verify all claims with data for the proper time period. See Department Appeals Board Decision at 4. The projected data for the time period prior to October 1, 1985 was not verified or verifiable. Therefore, it was not in compliance with any CAP approved by HHS. If Maryland were to submit projected data for a future time period, HHS could disapprove that claim as well. Congress gave HHS the authority to require that all claims meet reasonable verification standards. It did not require HHS to waive such rules simply because the state failed to develop corroborating data and can no longer do that.
 
 IV.
 
 22
 Maryland has asserted that denying retroactive approval of its CAP will result in its receiving less than full reimbursement for the expenses it incurred that could have been eligible for Title IV-E reimbursement. Approval of a plan and compliance with the plan approved are two different things. HHS approved the SSTS plan, but Maryland could not comply because it could not furnish satisfactory evidence of costs incurred for the eight quarters preceding the final quarter of 1985. However, even if Maryland could prove that some of its actual expenses were not reimbursed, HHS would not be compelled to provide reimbursement. Title IV-E mandates that the United States pay only for expenses incurred under a "plan approved by the Secretary," 42 U.S.C. Sec. 671(a), not for all expenses incurred in foster care programs. Thus, a state that administered a program substantively complying with Title IV-E but did not submit a plan would be entitled to no funds at all. This provision provides legislative recognition of the United States' interest in determining compliance by states with reasonable accounting standards before disbursing large sums of money. 42 U.S.C. Sec. 674(a)(3) requires HHS to reimburse states for half of all administrative expenses, but that provision also applies only to costs "found necessary by the Secretary for the proper and efficient administration of the State plan." Until 1985, the higher administrative expenses calculated by SSTS were not part of the CAP; nor has Maryland made a case under 45 C.F.R. Sec. 95.515 that they should be recaptured retroactively.
 
 V.
 
 23
 We have found that HHS' regulation properly implements Title IV-E of the Social Security Act. Maryland further asserts that even if the regulation is valid, HHS should grant the claim because "an earlier date is needed to avoid a significant inequity." Maryland is entitled to appellate review of HHS' interpretation of its own regulation, although HHS' view should be accorded considerable deference.
 
 
 24
 HHS found in this case that Maryland had not proved the existence of a significant inequity for two reasons. First, its only claim to a significant inequity was based on the fact that it claimed to be owed close to $5 million, but it had not proved that figure, or any other dollar figure of reimbursement, to a reasonable degree of certainty. Second, Maryland itself chose the RMS methodology for computing its reimbursement. Any shortfall, and any inequity, was caused by its own choice. All of the regulations needed for Maryland to understand what expenses were properly reimbursable were in place by 1982, and Maryland could have submitted its new CAP at an earlier time. Had this been done, Maryland would have been able to use an acceptable methodology in identifying its allowable expenses. We find that substantial evidence supports these factual findings by HHS that no inequity exists and, therefore, retroactive reimbursement should be denied.
 
 VI.
 
 25
 In conclusion, we find that the Secretary's approving of the SSTS method for use only in periods where SSTS data had actually been collected was both logical and an appropriate exercise of the discretion mandated by statute. The statute of limitations provision of the Social Security Act did not require the Secretary to accept an application for reimbursement that otherwise lacked sufficient support, and does not preclude the Secretary from setting more stringent standards for the approval of retroactive adjustments to CAPs. The HHS ruling in this case was supported by substantial evidence, and in accordance with governing law.
 
 
 26
 The district court's ruling is, therefore, reversed, and the case is remanded for entry of final judgment in favor of HHS.
 
 
 27
 REVERSED AND REMANDED.