Anna Marie RHOADS

v.

**Jo Anne B. BARNHART, Commissioner of Social Security Administration**

No. 9:99 CV 25.

United States District Court,
E.D. Texas,
Lufkin Division.

March 3, 2006.

Anna Marie Rhoads, pro se, Nacogdoches, TX, for Plaintiff.

Gregory E. White, Dallas, TX, for Defendant.

## ORDER

CLARK, District Judge.

Anna Marie Rhoads originally appealed a final decision of the Commissioner of

Social Security Administration, *denying* an application for disability insurance benefits. The court remanded the case to the Commissioner for further administrative proceedings to consider additional evidence. More than three years later, plaintiff petitioned the court, asserting that upon remand, her application for benefits was *approved,* but that she had never been properly *paid.*

The court referred this matter to the Honorable Earl S. Hines, United States magistrate judge at Beaumont, Texas, for proper consideration pursuant to applicable laws and orders of this court. The magistrate judge recommends remanding the case to the Commissioner to recalculate plaintiff's monthly and retroactive benefits, to consider certain arguments advanced by plaintiff, and to issue a new final decision sufficient for judicial review.

No objections to the magistrate judge's findings, conclusions and recommendations were filed by the parties. Accordingly, the report of the magistrate judge (Docket No. 64) is **ADOPTED.**

By separate order, the court will remand this matter to the Commissioner for further proceedings.

## *REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE*

HINES, United States Magistrate Judge.

This action originally sought judicial review under 42 U.S.C. § 405(g) of an adverse decision of the Commissioner of Social Security Administration on plaintiff's claim for disability benefits. The court remanded the matter for consideration of new evidence on September 26, 2001. More than three years later, plaintiff applied for a writ of mandamus, asserting that upon remand, her application for benefits was *approved,* but that she had never been *paid.*

Pursuant to General Orders 05–06 and 05–07, the matter is again referred to the undersigned United States magistrate judge for a report with a recommendation for disposition.

## I. INTRODUCTION

One hardly can imagine a case more procedurally fouled and tortured than this one. The extent of the disarray is almost self evident from the fact that plaintiff's claim remains unresolved although more than *eleven years* have elapsed since the date of her initial application.

Plaintiff and the Commissioner generated their own quagmire by disregarding established procedures designed to insure just and speedy administrative adjudications and subsequent judicial review of applications for social security benefits. Unfortunately, the court also perpetuated and exacerbated the morass through the undersigned's failure to recognize and correct sooner the parties' deviations from procedures they should have followed. Thus, all concerned are *in flagrante et pari delicto.*

## II. PROCEEDINGS

Although this exercise is tedious, reciting what has happened to date is a necessary predicate to meaningful analysis of what should happen next. The saga begins when plaintiff applied for Disability Insurance Benefits[1] on January 20, 1995. Ms. Rhoads, a former flight attendant, al-

---

**1.** Disability Insurance Benefits (DIB) are authorized by Title II of the Social Security Act. The DIB program provides income to workers who contribute premiums through federal Old Age, Survivors, and Disability Insurance payroll deductions or self-employment taxes, and who are subsequently forced by disability into involuntary, premature retirement. DIB applicants must prove their *insured status* and *disability.*

leged disability due to a debilitating physical condition—reflex sympathetic dystrophy [2]—resulting from a motorcycle accident on May 23, 1993. Her claim was denied administratively and again after an evidentiary hearing before an administrative law judge (ALJ).

Plaintiff timely requested judicial review by filing a complaint in this court on August 6, 1998. While the action was pending, Ms. Rhoads received a fully favorable administrative decision on her separate claim for Supplemental Security Income (SSI).[3] That decision, based on substantially the same evidence as pertained to the DIB claim, established a disability date of September 10, 1996.[4] This court concluded that since disability definitions for DIB and SSI programs are virtually identical, there were conflicting findings by two branches of the Social Security Administration. Further, the subsequent favorable SSI determination was new and material evidence. Accordingly, the court remanded plaintiff's claim for consideration of the new evidence. See Order at 2 (Docket No. 37). In so doing, the court expressly stated that its remand was "pursuant to 42 U.S.C. § 405(g) sentence six." Id. (emphasis added.)

## A. Proceedings On Remand

Upon remand, plaintiff's DIB claim was assigned to a new administrative law judge, Raymond J. Malloy, who conducted another evidentiary hearing. Predictably, ALJ Malloy harmonized the Commissioner's disability determination with the earlier SSI decision. Thus, on July 16, 2003, ALJ Malloy held that plaintiff is disabled. Moreover, ALJ Malloy determined that plaintiff's disability commenced on May 27, 1993, as Ms. Rhoads contended. (The SSI decision held disability commenced later on September 10, 1996.) Therefore, he ruled that Ms. Rhoads is entitled to DIB benefits both prospectively and retroactively from May 27, 1993 through September 10, 1996 (when she became entitled to receive SSI benefits). See Pet. for Writ, Ex. 2 at 8 (Docket No. 39–2).

Following official protocol, ALJ Malloy did not calculate the amount of Ms. Rhoads's benefits. Instead, he returned her application, together with his decision, to a "Program Service Center" (a regional office of the Social Security Administration (SSA)) for calculation of those benefits. See SSA's Program Operations Manual System (POMS) § DI 12010.035 (2006) (SSA policy site). According to policy, SSA "adjudicators" input relevant data into a computer program (generally referred to as SSA's "Mainframe Computer System") that calculates an individual's benefits using, inter alia, a claimant's "average indexed monthly earnings" and "primary insurance amount."[5] Subsequently,

---

**2.** Reflex sympathetic dystrophy is a "series of changes caused by the sympathetic nervous system, marked by pallor or rubor, pain, sweating, edema, or osteoporosis, following muscle sprain, bone fracture, or injury to nerves or blood vessels." Dorland's Illustrated Medical Dictionary 560 (29th ed.2000).

**3.** Supplemental Security Income (SSI) is authorized by Title XVI of the Social Security Act. The SSI program provides an additional resource to the aged, blind, and disabled poor to assure their income does not fall below poverty level. SSI applicants must prove both indigence and disability.

**4.** Plaintiff disagreed with the disability onset date, asserting instead that the correct date was May 27, 1993. However, although represented by counsel, she failed to request formal reconsideration of that issue, and the initial determination became final.

**5.** Chapter RS 600 of POMS generally explains the way benefits are calculated under Title II of the Social Security Act. This chapter also includes instructions for computing, recomputing and recalculating the primary insurance amount. See POMS § 601.001 (2006).

an SSA letter notifies a claimant of the SSA's "initial determination" as to the benefit amount. *See* POMS §§ GN 3101.001, DI 12010.35, NL 601.150 (2006).

Approximately six months later (January 13, 2004) SSA's "Office of Central Operations" notified plaintiff by letter that her regular monthly DIB benefit prospectively would be $1,392.00. However, the letter stated that all *retroactive* benefits for the period of January, 1994, through February, 1997, were withheld because the calculated amount was subject to reduction by the amount of SSI benefits received during that period. The letter advised plaintiff of a right to appeal the decision within 60 days, and provided information regarding an appropriate form available for use when appealing, an address for submitting an appeal, and other relevant information. *See* Pet. For Writ, Ex. 3 at 2 (Docket No. 39–3).

Approximately four months later (May 1, 2004) the SSA central operations office sent Ms. Rhoads a second letter reconfirming the monthly DIB benefit amount, and stating that SSA would pay a retroactive benefit payment "soon" because SSA had determined that she had *not* received SSI benefits during the time period at issue. *See* Pet. for Writ, Ex. 4 at 1 (Docket No. 39–4). This letter contained an identical notice of right to appeal within 60 days. *Id.*

On June 21, 2004, about six weeks after receiving the second letter, Ms. Rhoads sent a letter requesting SSA to recalculate her DIB benefits. *See* Pet. for Writ, Ex. 5 at 1 (Docket No. 39–5). She stated that no retroactive benefits had been paid, and she contended that her posted earnings for the years 1994 through 1996 were *back wages*

paid for services prior to becoming disabled, not *current wages*. Although the existing record does not disclose that plaintiff was then aware as to how, exactly, SSA had calculated her benefits, the undersigned infers that plaintiff was concerned about a statement in ALJ Malloy's decision that certain income was *wages*.[6]

**B. Mandamus Proceedings**

The term "soon" is inherently imprecise. But Ms. Rhoads's patience was exhausted by November, 2004, when, after more than five months from her receipt of the central operations office letter (and sixteen months after ALJ Malloy's decision declaring her entitled to retroactive benefits) she still had received nothing. Accordingly, she resorted to the court. Proceeding *pro se*, she filed a petition for writ of mandamus. She requested that the court order the Commissioner to pay her retroactive DIB payments under ALJ Malloy's July 16, 2003, decision.

Whether the petition stirred the Commissioner to act is unknown. But three months after the petition was filed, SSA wrote Ms. Rhoads stating that it had deposited $39,511.50 into her account. *See* Def.'s Resp. to Pl.'s Am. Pet. for Writ., Ex. 1 (Docket No. 48). This sum was net after deducting $4,000 in attorney fees from the calculated amount. This letter did not contain the customary notice of right to appeal. Instead, it invited Ms. Rhoads to call or visit the SSA office to ask any questions she might have.

On February 23, 2005, Ms. Rhoads met with an SSA employee, Debbie Simpson, at SSA's field office in Nacogdoches, Texas, for an in-person explanation of her bene-

---

**6.** ALJ Malloy's decision reads in part:

*The claimant's posted earnings for the years 1994 through 1996 represent wages from vacation pay, back pay and a buyout program offered by the claimant's previous employer.*

*These posted wages do not represent earnings from substantial gainful work activity subsequent to the date of alleged onset.*

*See* Pet. for Writ, Ex. 2 at 5 (Docket No. 2) (emphasis added).

fits. Among other things, Ms. Simpson told Ms. Rhoads that she could file a request for reconsideration if she disagreed with SSA's calculations. Def.'s Resp. to Pl.'s Pet. for Writ, at 2 (Docket No. 41). Ms. Rhoads met with Ms. Simpson again on April 7, 2005. During this meeting Mrs. Rhoads became aware that alleged calculation errors were made by the SSA when calculating her benefits. *See* Aff. Anna Marie Rhoads at 4 (Docket No. 45). Ms. Rhoads claims the aforementioned letters and meetings have repeatedly provided her with inaccurate written statements regarding her retroactive DIB award. *See id.* at 6.

Meanwhile, the court reviewed Ms. Rhoads's petition and concluded that her allegations were not frivolous. Therefore, the court ordered the Commissioner to respond and show cause why the petition for writ of mandamus should not be granted. The court's order was entered on May 10, 2005. *See* Show Cause Order (Docket No. 40).

The Commissioner responded on June 6, 2005. The Commissioner admitted that Ms. Rhoads had been underpaid when her petition for writ of mandamus was filed. The Commissioner conceded that Ms. Rhoads was found to be disabled on May 27, 1993 pursuant to her favorable 2003 ALJ decision, and that her first month of entitlement for disability was 1994. *See* Def.'s Resp. to Pl.'s Pet. for Writ at 1–2 (Docket No. 41). Therefore, she should have received retroactive benefits. However, the Commissioner reported that she subsequently paid Ms. Rhoads $39,511.50 for retroactive benefits in January, 2005 (two months after the petition was filed). Further, the Commissioner averred that Ms. Simpson subsequently assisted Ms. Rhoads in understanding how those benefits were calculated. Hence, the Commissioner asserted that "further court inter-

vention is not necessary as Plaintiff has been fully paid what was legally owed to her based upon her DIB application filed on January 20, 1995." *Id.* at 2.

Ms. Rhoads was not convinced. One month later, on July 6, 2005, she amended her petition to request that the court order the Commissioner to provide her and the court with an accurate, line-item accounting supported with citations to statutory, regulatory, or other authority for each calculation. As grounds, Ms. Rhoads noted that the Commissioner's own calculations contained an arithmetic error resulting in an underpayment of $1,219.50. Further, and given the flyblown history to date, she asserted that even more problems could exist in SSA's calculations.

On August 23, 2005, the Commissioner responded to Ms. Rhoads's amended petition. The Commissioner contended that the information requested by plaintiff already had been provided to her during the April 7, 2005 meeting with Ms. Simpson at the Nacogdoches office. Further, the Commissioner argued that mandamus is inappropriate because Ms. Rhoads had not exhausted her remedies by appealing the amount of benefits paid to her in accordance with administrative procedures for Title II social security cases.[7]

The court determined that it should convene an evidentiary hearing on the petition. Ms. Rhoads and counsel for the Commissioner appeared on August 30, 2005. The court received documentary exhibits, testimony from Kristy Miller, a SSA employee in the Beaumont, Texas, field office, and oral arguments. Collectively, this information seemed to enhance Ms. Rhoads' understanding of how her benefits were calculated and to ease her concerns regarding their accuracy. At the conclusion of that hearing, the court concluded

---

7. *See* 20 C.F.R. § 404.900 (2005) (explaining generally the administrative process).

that there was a reasonable probability of an amicable settlement. Thus, the court directed the Commissioner to provide Ms. Rhoads with all relevant documents and records, and to then provide a representative to meet with Ms. Rhoads at the Nacogdoches office to review and explain each step in the computation of her past and present DIB benefits. Following the meeting, the Commissioner was to file a status report. *See* Order at 2 (Docket No. 52).

Ms. Rhoads indicated that this solution was acceptable. Accordingly, the court denied her petition for writ of mandamus as moot, without prejudice to reassertion, if issues remain unresolved. *See* Memo & Order at 2 (Docket No. 53). On the same day, the court ordered the case administratively closed. *See id.*

This settlement initiative failed. On October 13, 2005, the Commissioner's counsel filed a status report, stating that the parties failed to agree on much of anything. The report reaffirms that the Commissioner concedes that Ms. Rhoads may be entitled to an additional $1,219.50. Def.'s Status Rpt. at 6 (Docket No. 58). However, the report states that disagreements arose at the settlement conference. Specifically, a dispute arose as to whether Ms. Rhoads's benchmark "eligibility year" should be 1993(SSA) or 1994 (Rhoads). Another dispute arose as to the treatment of a lump sum distribution of $51,645.00 which Ms. Rhoads received from her former employer in 1996 pursuant to a "buyout agreement."

One week later, Ms. Rhoads filed her own status report wherein she argued that SSA still failed to give her all necessary and relevant information. Moreover, she essentially amended her petition for a second time. Armed with new information obtained at the settlement conference, she now argues that the court should order the Commissioner to recalculate her benefits

(a) using 1994 as her eligibility year and (b) treating lump sum buyout agreement proceeds as back wages on an "accrual method." Ms. Rhoads states that a proper recalculation will result in an additional payment of $53,764.20 in DIB benefits. Further, she requests the court to order the Commissioner to refund $4,000 which was deducted as an attorney's fee because her prior counsel, R.G. Willis, Esq., allegedly breached his contract with Ms. Rhoads by not fulfilling "his legal obligations, written or oral promises." *See* Pl.'s Resp. to Def.'s Status Rpt. at 9 (Docket No. 59).

The Commissioner replied on November 1, 2005. The Commissioner reasserted that Ms. Rhoads has received all relevant formulas, definitions and example computations used in her specific case. The Commissioner asserts that Ms. Rhoads's contentions regarding the correct eligibility year and treatment of her buyout agreement proceeds both violate governing regulations and SSA policy. The Commissioner complains that Ms. Rhoads's demands for an additional $53,764.20 in DIB benefits and for a refund of $4,000 attorney fee are entirely new and asserted too late.

## C. Additional Administrative Action During Pendency of This Suit

On January 30, 2006, Ms. Rhoads notified the court that the Commissioner sent a letter on December 21, 2005, informing her that she will "soon" receive an additional $6,233.00. The letter provides no explanation as to why Ms. Rhoads is entitled to such sum, what it represents, or how it was calculated. It simply states, "because we had withheld money from your benefits."

Ms. Rhoads again requests reconsideration with SSA. She reasserts her earlier argument that the additional amounts

owed is in excess of $53,000.00, not $6,233.00.

## III. What Went Wrong?

As stated initially, all concerned share responsibility for the despicable circumstance that this dispute not only lingers but deepens. Ms. Rhoads failed to file a formal administrative appeal in the manner instructed in two letters from the central operations office. She failed to request reconsideration in the manner suggested by Ms. Simpson. Had she utilized either option, she likely would have obtained another evidentiary hearing before an administrative law judge wherein her arguments would have been addressed in a written decision susceptible to meaningful judicial review. Instead, she resorted to federal court where her complaints continue to evolve and expand.

The Commissioner is held to a higher standard of competence than a *pro se*, disabled claimant. Relatively speaking, the Commissioner is more at fault. First, the Commissioner's excessive delay in processing and paying retroactive benefits is without justification. Second, the Commissioner's own calculations are arithmetically incorrect, but the error has not been remedied. Third, the Commissioner completely ignored her statutory duty following a "sentence six remand." When a court remands and orders the Commissioner to hear and consider additional evidence, plain language of 42 U.S.C. § 405(g) requires the Commissioner to "file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or

affirming was based." Had the Commissioner troubled herself to comply with that requirement, this matter would not have dragged on now into its twelfth year without resolution.

■ Finally, the court—more accurately, the undersigned—must express a *mea culpa*. First, when Ms. Rhoads filed her petition for writ of mandamus, the undersigned did not immediately perceive that the Commissioner had not filed her new decision and an updated transcript. Second, and more significantly, the undersigned was uninformed of well-established and governing circuit precedent which holds unequivocally that federal courts may not review the Commissioner's social security decisions via petitions for writs of mandamus.[8] Had the court immediately recognized the Commissioner's default or its lack of jurisdiction to entertain a petition for writ of mandamus, it could have set the parties onto a proper and straight course. Thus, the court's muddled approach accounts for at least a substantial part of the delay between November, 2004 (when the *pro se* petition for writ of mandamus was filed) and the present.

## IV. What Should the Court Do Now?

■ While the court lacks jurisdiction to grant or even entertain Ms. Rhoads's petition for a writ of mandamus, it is not completely without authority. The court previously remanded this action to the Commissioner pursuant to sentence six of Section 405(g) for consideration of new evidence. That remand was not a final judgment. This is so because,

8. In *Green v. Heckler*, the circuit court discussed mandamus jurisdiction over social security claims. 742 F.2d 237, 241 (5th Cir. 1984). The court held that review of a social security claim is either available under § 405(g), or precluded completely. *Id.* at 241 (citing *Califano v. Sanders*, 430 U.S. 99, 110, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) (Stewart, J., concurring)); *see also* 42 U.S.C. § 405(h) (2006). The court's reasoning was that allowing mandamus jurisdiction "would frustrate the purpose of § 405(g) and (h), by which Congress provided the sole method of review of social security claims." *Id.*

[A sentence six remand] does not affirm, modify, or reverse the [Commissioner's] decision; it does not rule in any way as to the correctness of the administrative determination.

*See Melkonyan v. Sullivan,* 501 U.S. 89, 98, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). Following sentence six remands, courts *retain jurisdiction* in the matter. See *Sullivan v. Finkelstein,* 496 U.S. 617, 626–27, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990); *Frizzell v. Sullivan,* 937 F.2d 254 (5th Cir.1991); *see also Shalala v. Schaefer,* 509 U.S. 292, 300, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993). Thus, this court continues to have authority to review the Commissioner's final decision, and to enter a judgment affirming, modifying or reversing, and, in conjunction therewith, order another remand if appropriate.

█ Remand for reconsideration in light of Ms. Rhoads's arguments, and issuance of a reasoned decision subject to meaningful judicial review, is the only clear choice for the court. First, such a course does no violence to the regulation which requires a dissatisfied claimant to request reconsideration within sixty days after an initial determination. *See* 20 C.F.R. § 404.909 (2005). Ms. Rhoads sent a letter requesting recalculation of her benefits within sixty days after receiving SSA's May 1, 2004, letter informing her that she would soon receive retroactive benefits. Her letter request gave fair notice that she contended that her benefits should be calculated on a basis that treated posted earnings received in the years 1994 through 1996 as back wages. Although Ms. Rhoads did not use SSA's prescribed form (SSA–561–U2), she was not required to. A request can be either formal (on prescribed forms) or informal, and informal requests can be implied. *See* POMS § GN 3102.100(D)(2) (2006). A request for reconsideration is *"any writing* or timely submission of additional evidence by the claimant ... after receipt of notice of an initial determination

*which clearly implies a disagreement with the determination." See* POMS § GN 3102.100(D)(2)(c) (2006) (emphasis added).

Second, upon remand the Commissioner—acting either through the Appeals Council or an administrative law judge—can issue a final written decision addressing Ms. Rhoads's various arguments. Those arguments have evolved piecemeal over time as Ms. Rhoads learned more about how SSA made an initial determination as to the amount of her monthly benefits and retroactive benefits. An administrative law judge will be particularly well-suited to hear and weigh those arguments, and then apply correct principles of law to the facts. The judge can then issue a decision resolving all arguments and articulating reasons that support the findings and conclusions of the judge.

Third, the court cannot conclude that a remand for reconsideration would be pointless. During this litigation, the Commissioner has expressly or impliedly admitted to making errors regarding disability benefits owed to Ms. Rhoads on at least three occasions. First, the Commissioner acknowledged error in not paying any retroactive disability benefits for over nine months after the May 1, 2004 letter which stated that such benefits would be paid "soon." *See* Def.'s Resp. to Pl.'s Pet. for Writ at 1. Second, once retroactive disability benefits were paid late (after suit was filed), the Commissioner through counsel acknowledged another arithmetic error resulting an underpayment of $1,219.50. *See* Def.'s Status Rpt. at 6. Finally, the Commissioner's recent, unexplained notification that Ms. Rhoads will receive an additional $6,233.00 is an implicit acknowledgment that at least until now, benefits have not been computed correctly, even under the Commissioner's own protocol.

Remand also is appropriate to address Ms. Rhoads's legal arguments. The Com-

missioner's counsel does not dispute Ms. Rhoads's assertions that if her eligibility year is 1994, her benefits increase. Similarly, counsel does not argue that if income plaintiff received from her former employer under a buyout agreement is treated as back wages and attributed to prior years service, her monthly and retroactive benefits will be greater than initially determined by SSA.

Ms. Rhoads's contentions regarding her disability year and proceeds of the buyout agreement are not well supported in her briefs before this court. It is quite possible, therefore, that the Commissioner's ultimate decision may not favor her in those respects. That is beside the point, however, as it is the Commissioner's responsibility and prerogative to address Ms. Rhoads's arguments and requests in the first instance, and to then provide a record and a decision sufficiently detailed that if judicial review is requested, the court can determine how and why the Commissioner reached her decision.

## V. RECOMMENDATION

The cause should be remanded to the Commissioner with instructions to:

1. recalculate plaintiff's monthly and retroactive benefits, specifically addressing plaintiff's contentions regarding (a) eligibility year, (b) buyout agreement income, (c) arithmetic errors and (d) amounts withheld for attorney's fees;

2. issue a final decision with findings and conclusions sufficiently detailed and verifiable so as to be susceptible to meaningful judicial review;

3. file that decision, along with an updated transcript, with the court promptly after it is entered, and in no event later than six months from the date of this court's judgment is entered.

## VI. OBJECTIONS

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objection to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendation contained in this report within 10 days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations.

February 7, 2006.