The STATE of KANSAS ex rel. SECRETARY OF SOCIAL AND REHABILITATION SERVICES, Plaintiff,

v.

Donna SHALALA, as Secretary of the United States Department of Health and Human Services, Defendant.

No. 93–4162–SAC.

United States District Court, D. Kansas.

July 14, 1994.

As Corrected July 19, 1994 by Nunc Pro Tunc Order.

Robert R. Hiller, Jr., Social & Rehabilitation Services, Topeka, KS, for plaintiff.

C. Geraldine Umphenour, Office of General Counsel, Dept. of Health & Human Services, Kansas City, MO, D. Brad Bailey, Office of U.S. Atty., Topeka, KS, Frank V. Smith, III, Dept. of Health & Human Services, Office of General Counsel, Kansas City, MO, for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

On July 28, 1993, the State of Kansas, ex rel., Secretary of Social and Rehabilitation, filed a complaint in this case against Donna Shalala, Secretary of the United States Department of Health and Human Services. The complaint seeks $6,123,973 owed for five fiscal quarters beginning April 1, 1988, and ending June 30, 1989, under the Aid to Families with Dependent Children–Foster Care and Adoption Assistance program (AFDC–FC), "as required by the Social Security Act, 4 [42] U.S.C. §§ 603 and 674, and implementing federal regulations, 45 C.F.R. §§ 201.5 and 201.15." The plaintiff essentially challenges a July 30, 1992, Department of Health and Human Services Departmental Appeals Board decision affirming the Administration for Children and Families (ACF)'s disallowance of Kansas' claim for $6,132,973. The Department Appeals Board rejected "all of Kansas' contentions that a retroactive effective date is either applicable or ought to be applicable."

The plaintiff contends that although it has submitted all of the required documentation to prove that it is entitled to reimbursement, the defendant has wrongfully denied its claims. The plaintiff claims that it has absorbed this loss which has displaced funds that could have otherwise been used for other welfare program expenditures. "In effect, the Defendant's actions have shifted a substantial portion of federal welfare costs associated with foster care to the State of Kansas, in apparent violation of federal law." The plaintiff essentially seeks review of the Secretary's decision under the Administrative Procedure Act (APA), 5 U.S.C. § 553, et seq.

On September 15, 1993, the Secretary filed a motion to dismiss, to which the plaintiff responded.

On November 2, 1993, the magistrate judge issued an order permitting discovery limited to the issues "related to the plaintiff's notice of its claim for retroactivity." See Dk. 12. On December 30, 1994, apparently in response to the plaintiff's notice of first interrogatories (see Dk. 14) and the plaintiff's request for certain depositions, the defendant filed a motion for a protective order precluding discovery under Fed.R.Civ.P. 26(c). In the memorandum in support of that motion, the defendant argues that the plaintiff has failed to demonstrate that discovery is justified in this case. Specifically, the defendant argues that under the APA, review is, subject to certain narrow exceptions, limited to the administrative record. The defendant contends that the plaintiff has failed to demonstrate that any of the exceptions to the general rule exist, and therefore discovery is inappropriate as the court should limit the scope of its review to the administrative record.

On January 10, 1994, the plaintiff filed a response to the defendant's motion for a protective order. In that response, the plaintiff argues that the magistrate judge had ordered discovery to commence and therefore the defendant's motion was not well-taken. Apparently later that same day, the plaintiff filed a supplemental memorandum in opposition to the defendant's motion for a protective order. In that memoran-

dum, the plaintiff argues, essentially without any authority, that discovery is appropriate in this case. The plaintiff also argues that discovery will not be unduly burdensome and therefore the defendant's motion for a protective order should be denied.

On January 14, 1994, the defendant filed a reply to the plaintiff's response. In that reply, the defendant argues that it has always contended that discovery in this case is not appropriate and that the magistrate judge entered the November 30, 1993, order contemplating that the defendant would file a motion for a protective order at the time the plaintiff initiated requests for discovery. The defendant also argues that the plaintiff failed to demonstrate that discovery in this case is warranted.

On February 9, 1994, this court issued a memorandum and order denying the defendant's motion to dismiss (Dk. 8). *See State of Kansas v. Shalala,* No. 93–4162–SAC, 1994 WL 80866, 1994 U.S.Dist. LEXIS 2827 (D.Kan. Feb. 9, 1994). In that memorandum and order, the court, *inter alia,* denied the defendant's motion to dismiss based upon the argument that the plaintiff had failed to file its appeal to this court from the July 30, 1992, decision of the Secretary in a timely fashion.

On January 31, 1994, the defendant filed a motion for summary judgment (Dk. 20) and this case comes before the court upon that motion. In the memorandum in support of her motion for summary judgment, the defendant sets forth a discussion of the nature of the action as well as a review of the statutory and regulatory background. In compliance with D.Kan.Rule 206, the defendant sets forth several pages of uncontroverted facts. The defendant discusses the appropriate standard of review and then proceeds to make the following arguments:

1. The State did not request DCA [Division of Allocation] to approve a retroactive effective date for the CAP amendment;

2. The State failed to appeal the alleged denial of a requested retroactive effective date for the CAP amendment;

3. ACF properly reject the State's attempt to adjust its claims by retroactive application of its new RMS methodology;

4. The State failed to show that refusing to give retroactive effect to the CAP amendment created an inequity or that the CAP approved for the period had a material defect.

5. Any inequity resulted from the State's own mismanagement and lack of diligence in amending its CAP.

6. The event triggering the need for a cap amendment was the State's discretionary decision to institute a change in methodology.

7. The State's retroactive claims are not authorized by the CAP regulations.

The defendant dedicates over twenty pages of her memorandum to a discussion on these issues.

In its response to the defendant's motion for summary judgment, the plaintiff states:

Prior to responding to the 12 paragraphs which comprise the defendant's allegedly uncontroverted facts in the defendant's memorandum (on pages 9 through 16), the plaintiff would point out that it has never received any answers to its interrogatories which were served on defendant in November of 1993.

As of this date, the defendant's motion for a protective order (filed December 30, 1993) is still pending. Plaintiff has filed two memoranda in opposition to the defendant's motion for a protective order.

Inasmuch as defendant has not replied to plaintiff's interrogatories, and discovery is far from complete, it is inconceivable that defendant could argue in good faith that there are no genuine issues as to any material facts.

The plaintiff then proceeds to respond to the defendant's statement of uncontroverted facts. However, none of the plaintiff's responses demonstrate that a genuine issue of material fact precluding summary judgment exists.

In a subsequent section titled "Controverted Facts," the plaintiff sets forth 39 separately numbered paragraphs.[1] Each para-

---

1. The paragraphs are actually number 1–17 and 19–40; paragraph number 18 was apparently

graph is phrased in the interrogative. While some of these paragraphs posit factual questions,[2] many of the paragraphs simply raise legal issues or otherwise challenge the legal conclusions asserted in the defendant's brief.

In a section of the brief titled "Argument and Authority," the plaintiff further elaborates on the basic proposition that the defendant has erroneously refused to pay the funds to which it is entitled. The plaintiff claims that it has suffered a tremendous inequity due to the defendant's action and that the court should compel the defendant to pay the amounts it deserves. In the conclusion to the plaintiff's brief, it states:

> It is not the intent of plaintiff to fully brief all of the issues in this case when defendant has purposely failed to respond to plaintiff's initial interrogatories and numerous factual issues (cited above) are thus clearly at issue in this stage of the litigation.
>
> Plaintiff respectfully requests that the Court order defendant to answer plaintiff's interrogatories and that another rescheduling or pretrial conference be held in order to determine what further discovery, if any, may be needed as a result of defendant's intentional failure to answer plaintiff's interrogatories.

Plaintiff's brief at 20.

In her reply brief, the defendant reasserts her contention that discovery in this case is not appropriate. The defendant argues that nothing presented by the plaintiff demonstrates that the administrative record is incomplete, and that any omissions in the record are due to the plaintiff's own failure to submit those documents prior to the time the Secretary issued her decision. The defendant contends that the plaintiff's brief raises new issues not presented below and therefore are not properly before the court. The defendant contends that many of the issues raised by the plaintiff border on the frivolous and that the questions posited are merely "an attempt to cloud the issue before the court and to create issues of fact where none exist."

In short, the defendant contends that the plaintiff does not demonstrate that a genuine issue of material fact exists and that her decision was not arbitrary, capricious or contrary to the law.

### Standard of Review[3]

"The [APA] provides that '[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof,' 5 U.S.C. § 702, and [the Supreme Court has] read the Act as embodying a 'basic presumption of judicial review.'" *Mount Evans Co. v. Madigan,* 14 F.3d 1444, 1449 (10th Cir. 1994) (quoting *Lincoln v. Vigil,* —— U.S. ——, ——, 113 S.Ct. 2024, 2030, 124 L.Ed.2d 101 (1993) (quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967))). Actions of agencies reviewed under the APA shall not be overturned unless "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Colorado Department of Social Services v. United States Department of Health and Human Services,* 29 F.3d 519, 522, (10th Cir.1994) ("We review the agency action to determine if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' *See Administrative Procedure Act,* 5 U.S.C. § 706(2).");[4] *Connecticut*

---

omitted by the plaintiff. The plaintiff also appears to at times erroneously refer to itself as the defendant.

2. Some of the paragraphs addressing factual issues specifically refer to the plaintiff's interrogatories.

3. The plaintiff cites no authority demonstrating that this standard of review is not appropriate in this case.

4. In *Colorado Department of Social Services,* the Tenth Circuit stated:

> Our review is narrow and deferential; we must uphold the agency's action if it has articulated a rational basis for the decision and has considered relevant factors. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983). When, as here, a dispute concerns an agency's interpretation and application of its own regulations, we give substantial deference to the agency. *See Downtown Medical Ctr. v. Bowen,* 944 F.2d 756, 768 (10th Cir.1991). We will affirm if we find that the agency considered "all relevant factors and articulated a rational connection between the

DCYS v. DHHS, 788 F.Supp. 573, 577 (D.D.C.1992), aff'd, 9 F.3d 981 (D.C.Cir.1993).

The court examines whether the agency based its decision on consideration of relevant factors, whether there has been clear error of judgment, and whether the agency complied with procedural requirements. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 at 416, 91 S.Ct. 814 at 824, 28 L.Ed.2d 136 (1971). While the court is to make a "searching and careful" inquiry into the facts, it is not to substitute its judgment for that of the agency. *Citizens to Preserve Overton Park*, 401 U.S. at 416, 91 S.Ct. at 824. Judicial review focuses on the administrative record existing before the agency. *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973).

*State of Kan., el rel. Todd v. United States*, 791 F.Supp. 1491, 1494 (D.Kan.1992), aff'd, 995 F.2d 1505 (10th Cir.1993).

■ The general rule that review of an administrative decision is limited to the administrative record is subject to certain, limited exceptions.

A reviewing court may go outside of the administrative record only for limited purposes. For example: Where the administrative record fails to disclose the factors considered by the agency, a reviewing court may require additional findings or testimony from agency officials to determine if the action was justified, *Overton*, 401 U.S. at 420, 91 S.Ct. at 825; or where necessary for background information or for determining whether the agency considered all relevant factors including evidence contrary to the agency's position, *Thompson v. United States Dept. of Labor*, 885 F.2d 551, 555 (9th Cir.1989); or where necessary to explain technical terms or complex subject matter involved in the action, *Animal Defense Council v. Hodel*, 867 F.2d 1244, 1244 (9th Cir.1989), and *Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir.1988).

*Franklin Sav. v. Director, Office of Thrift Super.*, 934 F.2d 1127, 1137 (10th Cir.), cert.

facts found and the choice made." *Action, Inc. v. Donovan*, 789 F.2d 1453, 1457 (10th Cir.1986).

denied, —— U.S. ——, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1991); see, e.g., *Friends of Payette v. Horseshoe Bend Hydroelectric*, 988 F.2d 989, 997 (9th Cir.1993) ("Generally, review of agency action, including review under NEPA, is limited to the administrative record but may be expanded beyond the record if necessary to explain agency decisions."); *National Audubon Soc. v. U.S. Forest Service*, 4 F.3d 832, 841 (9th Cir.1993) (certain circumstances, such as an allegation that an EIS has failed to mention a serious environmental consequence, failed to adequately discuss some reasonable alternative, or otherwise swept stubborn problems or serious criticism under the rug, may justify expanding review beyond the record or permitting discovery).

### Standards for Summary Judgment

A court grants a motion for summary judgment if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. *Anderson v, Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The substantive law governing the suit dictates which facts are material or not. *Id.* at 248, 106 S.Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "[T]here are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chemical Co.*, 849 F.2d 1269, 1273 (10th Cir.1988).

The movant's burden under Rule 56 of the Federal Rules of Civil Procedure is to lay out the basis of its motion and to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d

29 F.3d at 522.

1022, 1024 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). "A movant is not required to provide evidence negating an opponent's claim." *Committee for First Amendment v. Campbell,* 962 F.2d 1517, 1521 (10th Cir.1992) (citation omitted).

If the moving party meets its burden, then it becomes the nonmoving party's burden to show the existence of a genuine issue of material fact. *Bacchus Industries, Inc. v. Arvin Industries, Inc.,* 939 F.2d 887, 891 (10th Cir.1991); *see Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993) ("If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case."). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Phillips v. Calhoun,* 956 F.2d 949, 951 (10th Cir.1992) (citations omitted); *see Martin,* 3 F.3d at 1414 (non-moving party cannot rest on the mere allegations in the pleadings); *see also Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 479 (1st Cir.1993) ("Optimistic conjecture, unbridled speculation, or hopeful surmise will not suffice."). The court views the evidence of record and draws inferences from it in the light most favorable to the nonmoving party. *Burnette v. Dow Chemical Co.,* 849 F.2d at 1273.

More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

### Fed.R.Civ.P. 56(f)

Fed.R.Civ.P. 56(f) provides:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

The Tenth Circuit recently summarized the rules governing a 56(f) motion:

"Unless dilatory or lacking in merit, the motion should be liberally treated." James W. Moore & Jeremy C. Wicker, *Moore's Federal Practice* ¶ 56.24 (1988). A prerequisite to granting relief, however, is an affidavit furnished by the nonmovant. *Pasternak v. Lear Petroleum Exploration, Inc.,* 790 F.2d 828, 832 (10th Cir.1986). Although the affidavit need not contain evidentiary facts, it must explain why facts precluding summary judgment cannot be presented. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2740 at 530 (1983). This includes identifying the probable facts not available and what steps have been taken to obtain these facts. *See 6 Moore's Federal Practice* ¶ 56.24. In this circuit, the nonmovant also must explain "how additional time will enable him to rebut movant's allegations of no genuine issue of fact." *See Meyer v. Dans un Jardin, S.A.,* 816 F.2d 533, 537 (10th Cir.1987); *Patty Precision v. Brown & Sharpe Mfg. Co.,* 742 F.2d 1260 at 1264 (10 Cir.1984).

*Committee for the First Amendment v. Campbell,* 962 F.2d 1517, 1522 (10th Cir. 1992).

### Title IV-E

In *Colorado Department of Social Services v. United States Department of Health and Human Services,* 29 F.3d 519, 522, (10th Cir.1994), the Tenth Circuit briefly summarized Title IV-E of the Social Security Act and some of the terminology used in this opinion:

The Social Security Act provides for federal reimbursement of a percentage of state payments under certain approved public assistance programs. In addition to reimbursement of direct payments, states are entitled to partial reimbursement for the expenses of administering such federal programs, including Title IV-E. Administrative expenses often are associated with more than one federally-funded program; therefore, states are required to develop a cost allocation plan (CAP)—"a narrative

description of the procedures that the State agency will use in identifying, measuring, and allocating all State agency costs incurred in support of all programs administered or supervised by the State agency." 45 C.F.R. § 95.505. The CAP must

> contain sufficient information in such detail to permit the Director, Division of Cost Allocation, after consulting with the Operating Divisions, to make an informed judgment on the correctness and fairness of the State's procedures for identifying, measuring, and allocating all costs to each of the programs operated by the State agency.

*Id.* 95.507(a)(4). The CAP must be approved by the HHS Division of Cost Allocation (DCA) as a prerequisite to obtaining reimbursement. *Id.* 95.511; 42 U.S.C. § 671(a). A state must amend its CAP if the procedures shown in the existing CAP become outdated, a material defect in the plan is discovered, or other changes occur that make the allocation basis or procedures in the previously approved CAP invalid. 45 C.F.R. § 95.509. A CAP amendment is effective on the first day of the calendar quarter after that event, unless "an earlier date is needed to avoid a significant inequity to either the State or the Federal Government." *Id.* 95.515(a).

*Id.*, 29 F.3d at 520.

### Overview

As the defendant suggests, the plaintiff has not demonstrated that a genuine issue of material fact exists precluding summary judgment. In reaching this decision, the court has carefully considered all of the arguments advanced not only in the plaintiff's response to the defendant's motion for summary judgment, but also all of the arguments contained in the plaintiff's response to the defendant's motion for a protective order. Nothing presented in either memorandum demonstrates that it is appropriate to permit discovery in this case. Nor is the court convinced that the plaintiff has satisfied the requisites of Fed.R.Civ.P. 56(f).[5]

In short, the court is satisfied that the administrative record requires no augmentation, and therefore limits its review of the Secretary's decision to the administrative record. Based upon its review of the administrative record, the briefs of counsel, and the applicable law, the court concludes that the decision of the Secretary was not arbitrary, capricious or contrary to the law.

### Uncontroverted Facts

In light of the plaintiff's inadequate response, these facts are essentially taken from the defendant's statement of uncontroverted facts. Other facts which are included for the sake of clarity are taken directly from the administrative record or from the relevant statutes and regulations.

David M. Griffith & Associates, Ltd. (DMG) is a company which assists state and local governments with cost allocation and cost reporting in the area of human services. In October 1988, the State of Kansas hired DMG to implement a random moment sampling system for its social workers and income maintenance workers.

On March 24, 1989, Harrison S. Reed III, Senior Vice President of DMG, submitted to DCA the implementation plan for the Kansas Department of Social and Rehabilitation Services' (SRS) random moment sampling system (RMS) pilot project, as well as copies of the operating manuals for the RMS system for both social services and income maintenance workers at SRS. In pertinent part, the cover letter to the DCA states:

> Pending approval by the Division of Cost Allocation of the RMS as described in the enclosed implementation plan and supporting documents, SRS intends to invoke the exception provision contained in 45 CFT (sic) 94 (subpart E) at 45 CFT (sic) 95.-515(a). As such, the SRS may wish to

---

**5.** The court notes that the administrative record, which is part of the court file, is and has been available to the plaintiff.

In any event, the court will consider a timely motion to alter and amend if the plaintiff can demonstrate that it failed to advance any argument or failed to direct the court's attention to any portion of the administrative record based upon its good faith belief that the undecided motions concerning discovery in and of themselves precluded summary judgment.

seek an effective approval date for the claims filed subsequent to January 1, 1989, to avoid a "material inequity" in the distribution of costs among federally assisted and state cost objectives.

DMG also requested a meeting in April of 1989 to discuss the implementation and operation of the RMS pilot project.

In a letter dated May 9, 1989, DCA provided Kansas with comments on the RMS pilot project from certain federal operating divisions. That letter states in pertinent part:

Should you so desire, I could arrange a meeting for the purpose of discussing the comments received to date. However, per our telephone conversation on May 5, I understood you to say your preference was to have all OPDIVs present at a meeting. Other options are to have a meeting after I receive OHDS' comments or after the State formally submits and we review a change to its cost allocation plan. The Pilot Project Implementation Plan indicates that the RMS will become operational July 1, 1989 at the conclusion of the Pilot Project. While the Pilot Project itself does not constitute an event which invalidates the currently approved cost allocation plan, if the State in fact has the RMS operational July 1, 1989 a cost allocation plan revision should be submitted before July 1 in order for the revised plan to be approved with an effective date of July 1, 1989. Contrary to your statement in your March 24 letter that you intend to invoke 45 CFR 95.515(a), as we interpret 45 CFR 95.509(a), the key to an approvable effective date is the date the RMS becomes operational.

The letter closes by stating that "[s]hould you have any question or need further clarifications, we will respond during a mutually agreeable meeting as offered above."

On June 28, 1989, Kansas submitted its revised RMS implementation plan to DCA. The cover letter indicates that Kansas was preparing revision to its CAP and would be forwarded as soon as those revisions were completed. The letter also indicates Kansas' intention to implement the RMS system as of July 1, 1989, thereby permitting the state to claim Federal Financial Participation based upon its results. The letter also requests a final meeting of the Program Officer's Council during the last week of July 1989.

On August 4, 1989, Kansas submitted copies of its CAP to DCA. In pertinent part, the cover letter states:

Significant changes have been made in the system prior to statewide implementation. Sufficient data has not been collected, in the implementation quarter to adequately determine the financial impact of the RMS system at the present time. This data is currently being compiled and will be submitted to your office as soon as it becomes available. We would appreciate your review of the complete implementation plan and cost allocation plan revision as soon as possible. In addition, we would like to request a meeting with the Program Officer's Council to review our proposal at their earliest convenience.

Our yearly revision to the SRS Cost Allocation Plan, resulting from other SRS changes in programs, is being prepared and will be submitted to your office in the near future.

On October 6, 1989, DCA notified Kansas as follows:

The revision was submitted on June 28, 1989. A subsequent revision was submitted on August 4, 1989. This approval of the plan is effective July 1, 1989.

In accordance with 45 CFR Part 95, Subpart E this approval is continuous until the allocation method(s) shown in this plan is outdated as a result of organizational changes within your agency or legislative, regulatory, or other changes that make necessary the submission of a revision or new plan by you. The regulations require that as a condition of receipt of Federal financial participation in administration services (excluding purchased services) and training for any quarterly period, the State's claim for expenditures must be in accord with the cost allocation plan on file and approved by the DCA for that period. Revisions to your plan would be required for any changes indicated above. The responsibility for submission of revisions rests solely with the State.

Approval of the plan cited above is predicated upon conditions (1) that no costs other than those incurred pursuant to the approved State plan, are included in claims to the Federal government and that such costs are legal obligations, (2) that the same costs that have been treated as indirect costs have not been claimed as direct costs (3) that similar types of costs have been accorded consistent treatment (4) that the approval is based on information provided by the State and is void if the information is later found to be materially incomplete or inaccurate, and (5) that the costs claimed for Federal financial participation must be allowable under the law, the cost principles contained in OMB Circular A–87, and program regulations.

Kansas apparently received federal financial participation (FFP) for the retroactive period in question under the approved CAP in effect prior to the amendment approved July 1, 1989. Kansas generally refers to claims made under the approved CAP as its "original" claims for the retroactive period.

Subsequently, Kansas mailed claims to ACF in the amount of $7,158,016.[6] This amount represented the additional FFP claimed by Kansas based upon administrative costs that it had incurred for the period of January 1, 1988, through June 30, 1989, in operation of its federal foster care program under Title IV–E. Kansas based its "retroactive" FFP claims on the CAP amendment which had not been implemented or approved until July 1, 1989. Kansas' retroactive FFP claims were based upon the results of the new RMS system during the period of July 1989 through March 1990.

On February 1, 1991, ACF denied Kansas' additional claims based upon its conclusion that Kansas' approved CAP for the period prior to July 1, 1989, did not cover the allocation of the claimed costs. In addition, ACF concluded that even if Kansas had an approved CAP in place prior to July 1, 1989, which would have covered the allocation of the claimed costs, the claims for the period of January 1, 1988, through June 30, 1988,

would have been untimely because the claims under the approved CAP must be filed within two years after the calendar quarter in which Kansas made the expenditure. See 45 C.F.R. § 95.7.

Kansas had filed its retroactive claims on revised quarterly reports for the quarters ending March 31, 1990, and June 30, 1990. The revised quarterly report for the quarter ended March 31, 1990, was dated June 28, 1990, and was received on July 2, 1990. The revised quarterly report for the quarter ended June 30, 1990, was dated July 27, 1990 and was received on July 30, 1990. A further revision was dated August 13, 1990, and was received on August 15, 1990.

In the letter disallowing the retroactive claims, Kansas was informed that ACF's decision was final unless, within 30 days of receiving this decision, Kansas delivered written notice of intent to appeal.

On March 11, 1991, ACF received Kansas' "Notice of Intent to Appeal." In relevant part, in that document, Kansas asserted that its CAP "contained a material defect resulting in the under funding of the federal government's financial participation under Title IV–E." Kansas also claimed that the retroactive claims were submitted pursuant to an approved cost allocation plan; Kansas claimed that the retroactive claims were appropriate in light of the CAP amendment approved July 1, 1989. Kansas did not, however, raise any issue concerning the alleged denial of a requested effective date for the CAP amendment. Consequently, that issue was not properly before the Board.

On April 17, 1991, and on June 18, 1991, at Kansas' request, the Board stayed the appeal pending a decision of the United States Court of Appeals for the Fourth Circuit concerning a similar case involving the State of Maryland. On July 3, 1991, the court of appeals issued an opinion favorable to the Secretary. See Colvin v. Sullivan, 939 F.2d 153 (4th Cir.1991).

In Colvin, Maryland sought reimbursement for $4,896,479 for certain time spent by

---

6. Kansas subsequently conceded that $1,025,043 (an amount equal to the sum claimed due between January–March 1988) of the $7,158,016

retroactive claim was nonrecoverable under 42 U.S.C. § 1320b–2, which establishes a two-year limit for past claims.

social workers that it had underreported. Maryland claimed that the social workers' time was eligible for Title IV–E fund reimbursement. The Secretary denied Maryland's claim for retroactive reimbursement, relying in substantial part upon 45 C.F.R. § 95.515, which creates a rebuttable presumption against retroactive adjustments, subject to limited exceptions.[7] The district court reversed the Department of Appeals Board, finding 45 C.F.R. § 95.515 invalid.

The court of appeals reversed upholding the validity of 45 C.F.R. § 95.515.

> 45 C.F.R. § 95.515 reasonably presumes that a new CAP, as opposed to a claim submitted under an existing CAP, ordinarily should go into effect after the date when "a material defect is discovered" in the existing plan. 45 C.F.R. § 95.509(a). This regulation gives states an incentive to carefully examine their CAPs at all times, to discover any defects that might exist as early as possible. Maryland could not prove that the RMS method was materially defective until it began measuring its employees' time by the SSTS method, on October 1, 1985. Increasing disbursements from the date that Maryland began measuring by the SSTS method, and no earlier, is entirely appropriate. The Secretary did not abuse his discretion in making this determination.
>
> Maryland's CAPs under both the RMS and the SSTS methods required it to verify all claims with data for the proper time period. See Department Appeals Board Decision at 4. The projected data for the time period prior to October 1, 1985 was not verified or verifiable. Therefore, it was not in compliance with any CAP approved by HHS. If Maryland were to submit projected data for a future time period, HHS could disapprove that claim

as well. Congress gave HHS the authority to require that all claims meet reasonable verification standards. It did not require HHS to waive such rules simply because the state failed to develop corroborating data and can no longer do that.

939 F.2d at 156.

The court of appeals also rejected Maryland's contention that denial of its retroactive claims would mean that it would not be compensated for expenses it had incurred but would otherwise have been reimbursable:

> Maryland has asserted that denying retroactive approval of its CAP will result in its receiving less than full reimbursement for the expenses it incurred that could have been eligible for Title IV–E reimbursement. Approval of a plan and compliance with the plan approved are two different things. HHS approved the SSTS plan, but Maryland could not comply because it could not furnish satisfactory evidence of costs incurred for the eight quarters preceding the final quarter of 1985. However, even if Maryland could prove that some of its actual expenses were not reimbursed, HHS would not be compelled to provide reimbursement. Title IV–E mandates that the United States pay only for expenses incurred under a "plan approved by the Secretary," 42 U.S.C. § 671(a), not for all expenses incurred in foster care programs. Thus, a state that administered a program substantively complying with Title IV–E but did not submit a plan would be entitled to no funds at all. This provision provides legislative recognition of the United States' interest in determining compliance by states with reasonable accounting standards before disbursing large sums of money. 42 U.S.C. § 674(a)(3) requires HHS to reimburse states for half of all administrative

---

7. 49 C.F.R. § 95.515 provides in pertinent part:

> As a general rule, the effective date of a cost allocation plan amendment shall be the first day of the calendar quarter following the date of the event that required the amendment (See § 95.509). However, the effective date of the amendment may be earlier or later under the following conditions:
>
> (a) An earlier date is needed to avoid a significant inequity to either the State or the Federal Government.

> (b) The information provided by the State which was used to approve a previous plan or plan amendment is later found to be materially incomplete or inaccurate, or the previously approved plan is later found to violate a Federal statute or regulation. In either situation, the effective date of any required modification to the plan will be the same as the effective date of the plan or plan amendment that contained the defect.

expenses, but that provision also applies only to costs "found necessary by the Secretary for the proper and efficient administration of the State plan." Until 1985, the higher administrative expenses calculated by SSTS were not part of the CAP; nor has Maryland made a case under 45 C.F.R. § 95.515 that they should be recaptured retroactively.

939 F.2d at 156–157.[8]

On November 15, 1991, Kansas filed its brief and appeal file with the Board. In its brief, Kansas withdrew its claim for FFP for the calendar quarter ending March 31, 1988, thereby reducing its total claim to $6,132,973.

On March 5, 1992, the Board granted the ACF's request to bifurcate the issues in this case. On July 30, 1992, the Board issued its final administrative decision. For purposes of considering the bifurcated issues, the Board assumed that Kansas' methodology would provide a reliable estimate of underclaimed costs; consequently, the Board did not determine the efficacy of Kansas' RMS methodology.

In that decision, the Board concluded that the methodology used to calculate its retroactive claims was not an approved method as required by the applicable regulations, and that Kansas did not show that the method should be approved with retroactive effect. The Board concluded that Kansas had never asked for a retroactive effective date, even though it had previously stated that it intended to do so. The Board also held that ACF properly disallowed Kansas retroactive claims because they were not made under the CAP approved for the retroactive period.

The Board also rejected Kansas' arguments that it was entitled to retroactive effect of the CAP amendment under § 95.515. The Board concluded that there was no inequity in holding Kansas to the effective date it requested and had approved. The Board also concluded that the approved CAP was not materially incomplete or inaccurate.

In sum, the Board, having considered all of the arguments advanced by Kansas, disallowed the plaintiff's retroactive claims.

8. In its responsive brief, the plaintiff attempts to distinguish *Colvin* from the facts of this case.

On July 28, 1993, Kansas filed its complaint, appealing the Board's July 30, 1992, decision.

## Analysis

■ Based upon the uncontroverted facts, it is apparent that the Secretary's decision was not arbitrary, capricious or contrary to the law. It appears that the Secretary has given careful consideration to the arguments advanced by Kansas, has considered the relevant facts and the applicable law, and has reached a conclusion entirely consistent with an application of the facts to the law.

From the uncontroverted facts, it is clear that Kansas did not request DCA to approve a retroactive effective date for the CAP amendment. Even if DCA's May 9, 1989, letter was a denial of Kansas' request for a retroactive effective date for the CAP amendment, Kansas failed to follow the procedures for resolving disputes concerning the negotiation of CAPS. *See* 45 C.F.R. §§ 75.1, 75.2. Nor did Kansas appeal the "alleged" denial of a requested retroactive effective date for the CAP amendment.

Nothing argued by the plaintiff demonstrates that ACF erred in disallowing a retroactive claim based upon a CAP amendment which had not been approved for the period claimed. *See Colvin,* 939 F.2d at 156.

In its brief, the plaintiff repeatedly claims that the failure to reimburse it on its retroactive claims is inequitable. Kansas claims that it is "owed" the federal funds its seeks and that the loss of over six million dollars will adversely affect the State of Kansas. Although Kansas has been denied reimbursement of those expenses, the state's *own* choices and inability to comply with pertinent laws and regulations have essentially compelled this result. Based upon the administrative record, it appears that Kansas made the conscious choice to forgo implementing the RMS allocation method based upon its assessment that it would be too burdensome to initiate such a project. The Board's decision states:

The plaintiff's efforts to distinguish the case are largely unpersuasive.

Kansas admitted that it had long known that its case count CAP underclaimed; that it experimented with an RMS earlier but had decided not to change because it was too complicated; and that until personal computers became readily available, the State lacked the computer hardware to adopt and RMS. In any event, the mere fact (assumed for purposes of this case) that the State's Title IV–E claim has increased by application of different methodology does not establish that the case count method resulted in a substantial inequity. An under claim does not by itself establish a significant inequity. Moreover, reallocation of the costs to Title IV–E would lessen the amount allocated to other programs and may require decreases in claims for federal funds for other purposes. Administrative Record at 8. Moreover, the state's attempt to shift the blame to the Secretary for its failure to implement the RMS allocation method is largely unavailing. The court is satisfied that the Board's determination that Kansas failed to demonstrate that it was entitled to a retroactive CAP amendment under 45 C.F.R. § 95.515 was not arbitrary, capricious or contrary to law. *See Colorado Department of Social Services v. United States Department of Health and Human Services*, 29 F.3d 519, 523 n. 9 (10th Cir.1994); *Colvin*, 939 F.2d at 157 ("Any shortfall, any inequity, was caused by [the state of Maryland's] own choice."). Nor has the plaintiff demonstrated that the CAP approved for the relevant period had a material defect."

In sum, the court concludes that the Secretary's decision was not arbitrary, capricious or contrary to the law. The State of Kansas' belated attempts to claim certain Title IV–E costs by circumvention of the specific laws and regulations governing its entitlement to the funds were properly denied by the Secretary.

IT IS THEREFORE ORDERED that the Secretary's motion for summary judgment (Dk. 20) is granted. The Secretary's July 30, 1992, decision is affirmed.