**Gloria E. DELGADO, Plaintiff–Appellant,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant–Appellee.**

No. 00–4200.

United States Court of Appeals, Sixth Circuit.

March 4, 2002.

Before SUHRHEINRICH, SILER, and BATCHELDER, Circuit Judges.

PER CURIAM.

Plaintiff Gloria E. Delgado appeals the district court's affirmance of the Social Security Commissioner's denial of her application for a period of disability and disability insurance benefits ("DIB"). On October 4, 1995, Delgado applied for a

period of disability and DIB under the Social Security Act, 42 U.S.C. §§ 416(i) and 423, claiming she became disabled on October 29, 1994. Her application was denied initially and on reconsideration. Delgado requested a hearing before an administrative law judge ("ALJ"). On June 11, 1997, Delgado; Dr. Herschel Goren, a medical expert ("ME"); and Mr. Finnegan, a vocational expert ("VE"), testified. In an opinion of September 18, 1998, the ALJ found that Delgado was not disabled because she retained the residual functional capacity ("RFC") to perform her past relevant work as a food service manager. On November 30, 1998, the Appeals Council denied review, and the ALJ's decision became the final decision of the Social Security Administration ("SSA"). Delgado then sued in district court, which affirmed the denial of benefits and the requested period of disability. Delgado now appeals. We **AFFIRM** the decision of the district court.

## I. BACKGROUND

Delgado was born on February 13, 1943, and was educated through the fourth grade in Puerto Rico. From 1975 until her alleged disability onset date in October 1994, she owned and managed a small restaurant. Delgado could read and write Spanish, but could not do math or write English. However, she could communicate with her American customers.

Delgado stopped working because of back and shoulder pain in 1994 and sold her restaurant. She alleged October 29, 1994, as her onset date of disability. Previously, Delgado had complained of lower back pain in 1989, which Dr. Ahmad Shahamat, her treating physician, diagnosed as lower back strain. Later, Delgado complained of neck and upper back pain. In January and February of 1995, Delgado had a magnetic resonance imaging ("MRI") procedure, which showed a disc narrowing at C5–6 impinging on the ven-

tral cervical cord. In March 1995, Dr. Bhupinder Sawhny, Delgado's surgeon, excised a benign intradural mass and performed a discectomy on Delgado's cervix at C5–6. Delgado was released with medication and a support collar. She then complained of dizziness, neck pain, and numbness on her right side. On April 12, 1995, Delgado was admitted to a hospital for severe pain in the left shoulder and arm. Dr. Sawhny performed a vertebrectomy at C6 and excision of neoplasm. Delgado was again released with medication and a support collar to wear at all times. On May 31, 1995, Dr. Sawhny noted that Delgado had no left arm pain and only mild weakness in her right arm. He prescribed physical therapy, after which her strength improved to nearly normal. On July 12, 1995, Dr. Sawhny reported that Delgado was fully ambulatory and had no significant pain, with only minimal weakness in her right arm.

On September 3, 1995, Delgado reported that because of her dizziness she fell four feet down a flight of stairs, and landed on her head and right shoulder. She complained of a headache, swelling on the back of her head, and right shoulder pain, but she denied any weakness in her arms or legs. She was diagnosed simply with cephalhematoma and right shoulder contusions. On September 5, 1995, Dr. Sawhny noted that Delgado denied any neck pain, her recent MRI and cervical and intracranial angiographies were unremarkable, and her strength was normal except for some weakness in her right arm. Dr. Sawhny referred Delgado to Dr. John Y. Kalucis, an otorhinolaryngolist, to assess her dizziness on October 5, 1995. Dr. Kalucis concluded that the dizziness was related to a balance disorder of unknown cause.

On February 6, 1996, Dr. Sawhny noted that Delgado reported that she occasional-

ly had cold sensations in her right arm and leg and mild weakness in her right arm. On April 22, Delgado reported dizziness and that she had fallen three times in one week. She also complained of lower back and right-sided pain and burning sensations. Dr. Sawhny prescribed physical therapy, heat, ultrasound, massage, electrical stimulation, and advice on posture. An MRI on August 30, 1996, reflected no significant change from the MRI of September 5, 1995. On February 10, 1997, Dr. Shahamat noted hypertension. On February 26, 1997, Delgado complained to Dr. Sawhny of headaches, neck pain, and numbness in her right arm. Dr. Sawhny also observed some dizziness and hyperactive leg reflexes, but he reported overall good motor function and about 75 percent normal neck functioning. An MRI on March 12, 1997, showed no brain neoplasm or neurinoma.

Delgado performed her personal needs, with some help washing her back and dressing. She also performed her household tasks and cooking. She regularly attended church with her brother. She reported that she could stand for 10 minutes at a time, walk from her kitchen to her living room and back, lift a half-gallon of milk, kneel, and lift her left arm; but could not lift her right arm above her shoulder or touch her toes. As noted above, the ALJ determined that Delgado was not disabled because she retained the RFC to perform her past relevant work. This decision became final when the SSA declined review. The district court affirmed this opinion. Delgado now appeals and raises six issues.

## II. ISSUES

### A. Does substantial evidence support the ALJ's finding of Petitioner's RFC?

Delgado contends that the evidence does not support the ALJ's finding that she retained enough RFC to perform the job functions of her previous employment. Under 42 U.S.C. § 405(g), an ALJ's findings are conclusive as long as they are supported by substantial evidence. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997); *Duncan v. Sec'y of Health & Human Servs.,* 801 F.2d 847, 851 (6th Cir.1986). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 535 (6th Cir.1981).

In this case, the ALJ considered the objective medical findings, the testimony of the ME, as well as the relevant subjective factors, including Delgado's activities, her medication, and the absence of side effects. Based on the medical evidence, the ALJ found that Delgado was not as disabled as she claimed. The medical evidence did not indicate any significant muscle atrophy, muscle spasms, or motor and sensory deficits. The MRI showed only moderate degenerative changes in addition to the intradural mass. After the excisions of the intradural mass and the neoplasm and the discectomy and the vertebrectomy, the x-rays and angiographs showed good alignment, and the MRIs revealed no abnormalities. Delgado had full strength in her left arm and nearly full strength in her right arm (generally 4.7 out of 5). Dr. Sawhny observed "minimal" and "mild" weakness in her right arm, and noted that she did not drop objects. After Delgado's fall in September 1995, she had good range of motion in her neck and shoulder and denied neck pain. Again in April 1996, Dr. Sawhny noted that she had no significant neck pain. However, in February 1997, Delgado complained of neck pain. But Dr. Shahamat

noted that her description of symptoms was "vague," her neck motion was about 75 percent of normal, there was no muscle wasting, and she still had good motor function in all her arms and legs.

From this detailed review, it is clear that the medical evidence supports the ALJ's determination of Delgado's RFC. The ALJ's opinion was reasonably based on substantial medical evidence.

**B. Does substantial evidence support the ALJ's credibility determinations?**

■ Delgado also claims that the ALJ improperly discredited her testimony of her disability. This Court does not resolve conflicts in the evidence or determine the credibility of a claimant's testimony. *See Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir.1987) (per curiam). Rather, this Court determines whether substantial evidence supports an ALJ's decision. To establish a disability, a claimant must demonstrate a medically determinable impairment that reasonably caused the pain or disabling symptoms. 20 C.F.R. § 404.1529(b). The ALJ evaluates all relevant evidence offered to support the alleged symptoms. 20 C.F.R. § 404.1529(c). Relevant evidence includes objective medical evidence, medications, treatments, and subjective reports of aggravating and ameliorating conditions and the effects of the symptoms on the claimant's daily life. 20 C.F.R. § 404.1529(c)(2)–3; SSR 96–7p. However, an "ALJ may dismiss a claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict." *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1030 (6th Cir.1990). Further, an ALJ's credibility determinations of a claimant are not lightly discarded. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir.1993).

Delgado made several claims that conflicted with the medical evidence. Delgado claimed that she had difficulty lifting, walking, standing, sitting, or bending. However, Dr. Sawhny noted normal strength in both arms and legs in July 1995. And after a fall in September 1995, Delgado had normal motor, sensory, and reflex functions with a normal gait. Delgado's daily activities also belie her claim of disabling symptoms. Delgado tended to her personal hygiene and household chores, with occasional help in washing her back and dressing. She also regularly attended church. Further, Delgado's complaints of depression and memory loss also lack medical support. In May 1996, Delgado complained to her physical therapist that she felt depressed and had memory loss. However, the physicians' treatment notes do not reflect these complaints. Delgado also never sought psychiatric treatment. Finally, although Dr. Sawhny prescribed the antidepressant Elavil, he prescribed it for her right-sided burning sensation.

Where the objective medical findings, Delgado's medical history, and the ME's testimony differed, the ALJ followed the objective medical findings. We find that substantial evidence supports the ALJ's credibility determination.

**C. Did the ALJ reasonably rely on the ME's opinion?**

■ Delgado claims that the ALJ improperly relied on the ME's opinion to the exclusion of the medical findings in the record. Although the ALJ's opinion credits the testimony of the ME, the ALJ explicitly considers the findings of Delgado's physicians, Dr. Shahamat and Dr. Sawhny, and the hospital and emergency room records. Further, in his testimony, the ME discussed the medical evidence relating to Delgado's surgery and even acknowledged that some of Delgado's

symptoms could be residuals from the surgery. But, he ultimately concluded that these symptoms were not significant and would not impair her ability to work.

Delgado further contends that she was prejudiced because her treating physician did not complete a capacity assessment and because the ME stated that her treating physician would have been unable to complete the form. However, Delgado has not identified any prejudice. During his testimony, the ME acknowledged that Dr. Sawhny was "very intelligent." Further, the ALJ stated on the record that he would draw no conclusions from Dr. Sawhny's failure to complete the form.

Delgado also maintains that the ME confused the Listing Requirements with the concept of RFC and simply concluded that because Delgado did not meet the listing requirement she therefore was not disabled. However, the ME specifically distinguished between the Listing Requirements and Delgado's RFC. After considering the medical evidence, the ME testified that Delgado did not meet the Listing Requirements and specified that the medical evidence did not support any limitations on standing, walking, or lifting. Moreover, after considering other evidence in the record, including Delgado's self-reported limitations, the ME recommended how Delgado could continue to function by avoiding (1) lifting over her shoulder with her right arm, (2) repetitive work with her right arm, (3) climbing on ladders or working at heights (because of her dizziness), or (4) working around machinery. We find that the ALJ appropriately considered the ME's testimony and other evidence to determine Delgado's RFC.

**D. Does the ALJ's opinion comply with SSR 96–8p?**

■ Delgado claims that the ALJ's decision does not comply with SSR 96–8p.

She argues that SSR 96–8p requires the ALJ to include a function by function discussion of her maximum capacity to perform each work-related activity. She also argues that the ALJ did not adequately cite medical facts and other evidence or explain inconsistencies in the record, as required by SSR 96–8p. Delgado relies on *Diggdon v. Apfel,* 189 F.3d 477 (table), 1999 WL 617702 (10th Cir.1999)

In *Diggdon,* the court remanded a claim because the ALJ did not clearly indicate that he had considered the claimant's ability to meet each of the seven work-related exertional functions as identified by SSR 96–8p in determining that the claimant had the RFC for light work. *Diggdon,* 1999 WL 617702 at *3. SSR 96–8p requires an ALJ to individually assess the exertional (lifting, carrying, standing, walking, sitting, pushing, and pulling), and non-exertional (manipulative, postural, visual, communicative, and mental functions) capacities of the claimant in determining a claimant's RFC. Although SSR 96–8p requires a "function-by-function evaluation" to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged. *See Bencivengo v. Comm'r of Soc. Sec.,* 251 F.3d 153 (table), No. 00–1995 (3d Cir. Dec. 19, 2000); *see also Lawson v. Apfel,* No. IP 99–1112–C H/G, 2000 WL 683256 (S.D.Ind. May 25, 2000); *Lam v. Apfel,* No. Civ. A. 3:99–CV–2203, 2000 WL 354393 (N.D.Tex. Apr.5, 2000); *Morphew v. Apfel,* No. IP 99–655–C H/G, 2000 WL 682661 (S.D.Ind. Feb. 15, 2000); *Nikulin v. Apfel,* No. 97 C 3631, 1997 WL 688878 (N.D.Ill. Oct. 28, 1997).

In *Bencivengo,* the Third Circuit stated, "Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing." *Bencivengo,* slip op. at 4. The Third Circuit distinguished between what

an ALJ must consider and what an ALJ must discuss in a written opinion. The ALJ need not decide or discuss uncontested issues, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Bencivengo*, slip op. at 5.

Here, as discussed above, the ALJ discussed the medical and other evidence on the disputed issues and explained the basis for his determination of Delgado's RFC. Accordingly, we find that Delgado's argument lacks merit.

### E. Does the VE's testimony support the ALJ's finding that Delgado could perform her past relevant work?

Delgado contends that the VE's testimony does not support the ALJ's finding that she could do her past relevant work. Delgado argues that she does not have sufficient English language ability to be a food service manager, she lacks the two to four years of training that the VE specified as required, and she does not have transferable skills.

At the fourth step of the sequential evaluation process, Delgado must prove that she was unable to perform her past relevant work and that she is unable to return to her former type of work as generally performed. SSR 82–61; *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5, 148, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir.1987).

In administrative hearings for DIB, a VE's testimony is often elicited in response to an ALJ's hypothetical question posing a person with certain limitations. The hypothetical question need only include the alleged limitations of the claimant that the ALJ accepts as credible and that are sup-

ported by the evidence. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993). The ALJ may rely on the VE's testimony that such a hypothetical person can perform a certain job. *See Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927–28 (6th Cir.1987). Here, the ALJ's hypothetical question did not include all of Delgado's alleged limitations, but it did include all the limitations that the ALJ found credible and supported by the evidence. When the ALJ posed the hypothetical question, the VE indicated that the hypothetical person could perform Delgado's past relevant work as Delgado performed it and as it is performed in the national economy.

Delgado's objection that she had no transferable skills does not apply at step four; only the physical and mental requirements of the job are relevant. 20 C.F.R. § 404.1560(b); *see also* 20 C.F.R. S 404.1520(e).

Moreover, to the extent that the ALJ accepted Delgado's claims of dizziness and right arm weakness, he accommodated them in determining Delgado's RFC by limiting repetitive lifting, lifting above the shoulder, climbing ladders, and working around moving machinery or unprotected heights.

The VE's testimony constitutes substantial evidence. The ALJ properly relied on that evidence and reasonably concluded that Delgado could do her past relevant work and was not disabled.

### F. Is a remand warranted to consider evidence submitted with Delgado's appellate court brief?

■ Delgado contends that this matter should be remanded to consider additional evidence of her work history. She argues that she was awarded DIB on November 9, 2000, effective December 1, 1998, based on an application that she filed on April 3,

2000 that included a more detailed work history. She did not submit this detailed work history to the district court in the present case, even though she had the more detailed history before the district court issued its decision.

As a general rule, a court cannot overturn an ALJ's decision based on evidence not in the record before the ALJ. *Cotton v. Sullivan,* 2 F.3d 692, 695–96 (6th Cir.1993). Further, a court may remand a case for consideration of newly submitted evidence, but only upon a showing that the evidence is (1) new, (2) material, and (3) good cause exists for the claimant's failure to include it in a prior proceeding. 42 U.S.C. § 405(g), sentence six; *Casey,* 987 F.2d at 1233. This is referred to as a "sentence six remand" and requires all three elements. *Sizemore v. Sec'y of Health & Human Servs.,* 865 F.2d 709, 711 (6th Cir.1988).

Delgado's evidence does not meet these requirements. Although Delgado had not prepared this new version of her history before the first hearing, all the information in it was available before the ALJ's decision. Therefore, it is not new information. *See Sullivan v. Finkelstein,* 496 U.S. 617, 626, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990) (new evidence is evidence that was not in existence or available to the claimant at the time of the administrative proceeding).

Delgado also has not shown good cause for not producing this information earlier. *Cotton,* 2 F.3d at 695. In October 1995, Delgado submitted a work report describing her basic job duties. Later, at the hearing, the ALJ questioned her about her past relevant work-related duties. Delgado and her counsel could have submitted the information contained in the new work history either in the vocational report or at the hearing. *See Willis v. Sec'y of Health & Human Servs.,* 727 F.2d 551, 554 (6th Cir.1984) (good cause requirement not met where claimant did not request at ALJ

hearing that the record remain open until additional evidence could be submitted); *Sears v. Sec'y of Health & Human Servs.,* 840 F.2d 394, 402 (7th Cir.1988) (ALJ is entitled to presume that a claimant who was represented by counsel has made his best case) (citing *Glenn v. Sec'y of Health & Human Servs.,* 814 F.2d 387, 391 (7th Cir.1987)).

Delgado argues that she relied on her daughter as her translator for the new work report. However, Delgado's daughter witnessed the October 1995 report and attended the hearing to assist in translation. At the hearing, Delgado's counsel refused an offer for an official translator stating that Delgado could answer the ALJ's questions.

Further, Delgado has not shown that the new work report is material. Materiality requires Delgado to show that the ALJ would have decided the claim differently if he had considered the additional evidence. *See Sizemore,* 865 F.2d. at 711. The new work history report is more detailed, but it does not substantially differ from the June 11, 1997 hearing. The ALJ's finding of RFC does not preclude any of the activities listed on the new report. Further, the ALJ also found that Delgado was capable of performing her past relevant work as that work is generally performed in the economy, even if it would now appear that she could not perform it as she actually had performed in the past. *See* SSR 82–61; *Young v. Sec'y of Health & Human Servs.,* 925 F.2d 146, 149 (6th Cir.1990) ("sentence six" remand not required where newly submitted evidence contained nothing that would change the ALJ's decision).

Accordingly, Delgado has not met her burden for a remand because the evidence was not new or material and she lacked good cause for delay.

## CONCLUSION

We **AFFIRM** the decision of the district court.